(No. 5512.  Decided May 23, 1905.)

WILLIAM HULET, *Appellant,* v. WALTER ACHEY, JR., *et al.,
Respondents.*[1]

SALES — STANDING TIMBER — RESCISSION — FRAUD — FALSE REPRESENTATIONS AS TO QUALITY—INSPECTION BY VENDEE. A sale of standing timber and sawlogs cannot be rescinded by the vendee for false representations of the vendor as to quality, where the vendee had lived for a long time on the adjoining land, had twice gone over the land with a view of purchasing, and no claim is made that opportunity to make examination was not available.

[1] Reported in 80 Pac. 1105.

SAME—WARRANTY AS TO NUMBER OF LOGS—BREACH—RESCISSION—
DAMAGES. It is not ground for rescinding a contract for the pur-
chase of standing timber that there was a breach of a written war-
ranty as to the number of sawlogs on the land, the remedy being
by an action at law for damages.

Appeal from a judgment of the superior court for Che-
halis county, Rice, J., entered August 8, 1904, upon the
findings of the court and the advisory verdict of a jury,
dismissing on the merits an action for the rescission of a
sale of timber. Affirmed.

*J. C. Cross,* for appellant, contended that the vendee has
a right to rely upon representations, although he makes a
partial examination and has opportunity to investigate.
*Turner v. Houpt,* 53 N. J. Eq. 526, 33 Atl. 28; *Redgrave
v. Hurd,* 20 Ch. D. 1; Bishop, Non-Contract Law, § 337;
Webb's Pollock on Torts (Am. ed.), 379; *Albany City Sav.
Inst. v. Burdick,* 87 N. Y. 40. A mutual mistake as to
quantity would entitle the vendee to a rescission. Clark,
Contracts (1st ed.), 301; Benjamin, Sales (4th Am. ed.),
§ 50a.

*E. E. Shields,* for respondents.

DUNBAR, J.—This is an action by appellant, plaintiff and
vendee, to rescind a contract for the purchase of timber
and sawlogs, upon the ground of fraud and misrepresenta-
tions as to the character and quality of the logs, and also
because of a shortage in the number of logs stipulated for
in the agreement. The court called a jury to determine
issues of fact, and the jury found a shortage in the logs
stipulated to be furnished by the respondents, and found
that the plaintiff was induced to enter into the contract as
a result of misrepresentations, knowingly made by defend-
ants to plaintiff, as to the quantity and quality of the logs
upon the lands. They also found specially that the plain-
tiff had the opportunity to examine the claim in question
before he entered into the contract to purchase the same,

and that the only thing that prevented him from making such an examination was his confidence in the representations of the defendants; but that it was within the power of the plaintiff to ascertain the correctness of such representations. Upon these findings, the court, correctly regarding the findings of the jury as advisory in an equity action, decided that, inasmuch as the plaintiff had an opportunity to ascertain the number and condition of the logs notwithstanding the defendants' misrepresentations, the plaintiff was not entitled to rescission, under the established law of this state, and that he was asking the court to do what he ought to have done himself before he entered into the contract; and judgment was entered in favor of the defendants.

It was decided by this court, in *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366, that one who has the means of knowledge before him, and who refuses or neglects to avail himself thereof, will not be heard to assert that he was deceived or defrauded. In that case it was alleged that the vendor had made representations that were false and fraudulent, which representations led to the purchase of the land in question. The court, in discussing the case, said:

"Conceding that these representations were false, and conceding that the purchaser relied upon them, there is not yet enough shown, it seems to us, in this answer to give the defendant relief. There is no fiduciary relation between the seller and the buyer alleged. It is not alleged that the buyer was in such a position that he was unable to make an investigation concerning the truth or falsity of these alleged representations. So far as the allegations of the answer are concerned, there is nothing to show that the land was not at hand when this contract was made, and that it could not, by the use of ordinary prudence, have been investigated by the purchaser; and in cases of this kind, it seems to us that parties must exercise ordinary business sense, and the faculties which are given to them for the purpose of transacting business; and that they cannot call upon the law to stand *in loco parentis* to them in the ordinary transactions of busi-

ness and their ordinary dealings with their fellow men. . . . If people having eyes refuse to open them and look, and having understanding refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

And this doctrine has been followed in an unbroken line of authority. See, *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117.

What was said in the case just quoted is particularly applicable to the case at bar. Here the appellant had lived for a long time adjoining the land upon which were the logs and timber purchased. He had, at least twice, gone on to the premises for the purpose of viewing the logs and timber, and presumably made such examination as was satisfactory to him. At all events, there is no claim that the examination which was afterwards made was not available to him at any time before he purchased, and, under the rule announced above, he will not be heard to say that the contract which he entered into was not his contract.

In this case, however, the following warranty appears in the contract, which was reduced to writing: "The said parties of the first part hereby covenanting and agreeing that the sawlogs are not less than four hundred in number," situate and being on the land described therein. On this question, as to the number of logs actually on the land described, there is a plain conflict in the testimony; but, whatever may be the appellant's rights in an action for damages for violation of the contract as to the failure to furnish the amount of logs stipulated for, he cannot avoid the whole contract in an action for rescission, his remedy being, if he has any, purely an action for damages in a law court. It might be that, even though it were found—and this is a question upon which we do not now pass—that there was a shortage in the

number of logs, the respondents would supply the shortage within the time provided in the contract, and there would be no damages suffered by the appellant. In any event, these are questions to be determined, if determined at all, in another action.

The judgment is affirmed.

MOUNT, C. J., CROW, FULLERTON, HADLEY, RUDKIN, and ROOT, JJ., concur.