[No. 5790. Decided December 11, 1905.]

ARVILLA WALSH, *Respondent*, v. AUGUST MEYER *et al.,*
*Appellants.*[1]

PLEADING — OBJECTIONS — FAILURE TO DEMUR — CONSTRUCTION. A complaint for fraud and false representations, although exceedingly meager, will be liberally construed and upheld if possible, when attacked for the first time at the trial.

SALES—FRAUD—RESCISSION BY VENDEE—DUTY TO INVESTIGATE—INSTRUCTIONS. In an action for damages by reason of fraud in the sale of a rooming house and fixtures, and false representations as to the reputation of the house and its tenants and the profits of the business, instructions are erroneous where they do not cast upon the plaintiff the burden of such investigation as the opportunity furnished.

SALES—WARRANTY—MEASURE OF DAMAGES. The measure of damages for breach of warranty as to the character of a rooming house sold to the plaintiff, is the difference between the value of the property and what it would have been if as represented to be.

SAME—DAMAGES—FRAUD—MENTAL AGONY. In an action for damages for false representations as to the reputation of a rooming house sold to the mother of two young girls, damages for humiliation and mental agony due to the ill repute of the house and its inmates cannot be recovered.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 18, 1905, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits in an action of deceit. Reversed.

*Winsor & Hadley,* for appellants.

*W. L. Waters,* for respondent.

[1]Reported in 82 Pac. 938.

DUNBAR, J.—A summary of the allegations of the complaint in this action is to the effect, that on or about the 25th day of January, 1904, the plaintiff applied to defendants to purchase a rooming house, and the furniture in the house, located on Second avenue, Seattle; that plaintiff represented to defendants that she was unacquainted with the rooming business, and that she relied upon their statements in regard to the business; that thereupon the defendants, with intent to defraud and deceive, represented that all the rooms in said house were occupied and that the persons occupying them were permanent roomers, and that there was a net profit in the business averaging $45 a month; that the house had a good reputation, and that the roomers were of good character and reputation; that thereupon the plaintiff paid to the defendants the sum of $750 cash for the aforesaid rooming house, business, furniture, and good will, and thereafter moved in and took possession of said house and furniture; that the aforesaid representations made by the defendants were false, and known by the defendants to be false when they were made, and were made with intent that plaintiff rely upon the same, and were false in that the rooming business was not bringing in a net profit of $45, but was running at a loss of $40 a month; that the roomers who were occupying said rooms were not of good reputation, in that two women who occupied the front lower room of said house were women of ill repute, and known by the defendants to be such, and that they conducted themselves in such a way that it greatly humiliated, frightened, and grieved the plaintiff, and that she was forced to eject them and their men visitors from the premises; that by reason of said misrepresentations made by defendants, upon which plaintiff relied, she has suffered damage, in that the said rooming business was not earning a profit; that the reputation of said house rendered it difficult to get and keep respectable roomers; that the furniture was of less value when moved, and that plaintiff was greatly shocked, frightened, humiliated, and outraged, both on ac-

count of herself and of being the mother of two young girls, and suffered great mental agony and grief on account of the position in which she found herself placed, which said damage amounted in all to the sum of $2,000.

The defendants answered, denying any misrepresentations whatever, denying that the house was running at a loss of $40 a month, or any other sum; denied the representations that the house was averaging in excess of the expenses about $45 a month; denied that the reputation of the roomers in the house was discussed at all at the time the plaintiff rented the house; denied any damage to the plaintiff by reason of any misrepresentations made by the defendants, or that the plaintiff was shocked or frightened or humiliated or outraged, either on account of herself, or on account of being the mother of young girls, or that she suffered any grief whatever through any act of the defendants; but asserts that the plaintiff applied to the defendant Adele Meyer to purchase said lodging house, made several examinations thereof, and expressly stated, when she entered into the agreement with Adele Meyer for the purchase of said lodging house, that she had thoroughly examined the premises herself and was satisfied with the same as she found them and was willing to purchase the same upon her own examination. The reply denied the affirmative matters set up in the answer.

It appears from the testimony, that the plaintiff, after twice visiting the house and examining it, made an offer for the same, which was finally accepted by the defendants; that $150 was paid down on the house; that plaintiff returned to Walla Walla, and, after a week or ten days, came back to Seattle, bringing her children; again went to the house and, after an examination of the same, paid the balance of the money and took a bill of sale of the house. The case was tried to a jury, and a verdict rendered in favor of the plaintiff in the sum of $1,350. Judgment followed, from which this appeal is taken.

After the issues were formed, the appellants objected to

any testimony being offered under the allegations of the complaint, stating that it did not constitute a cause of action. This objection was overruled, and the action of the court in that respect constitutes the second assignment of error on this appeal. It may be conceded that the complaint in this case is exceedingly meager, and we will not now decide upon its sufficiency if it had been challenged by demurrer. But this court will not scan a complaint too critically where there has been no demurrer interposed, but the case has been allowed to go to trial to the extent of settling the pleadings and creating the expense of a convocation of the witnesses, as we do not regard such a practice as commendable.

A great number of errors are assigned, many of which, in consideration of the conclusion we have reached, it will not be necessary to discuss. The appellants, however, excepted to the following instructions and urge their giving as reversible error here. The court, after stating to the jury the allegations of the complaint in detail, proceeded as follows:

"You are instructed that it is for you to judge whether upon all the evidence in this case, the representations, if any, made by the defendants were calculated by them to, and did, mislead the plaintiff. I instruct you that, if you find from a fair preponderance of the evidence that the defendants made representations to the plaintiff that the moral character of the occupants of the house which plaintiff purchased was good, or that the rooms were all rented, or that the house was making a profit over expenses, and that such representations, or any of them, were false and defendants knew them to be false, and they were calculated by defendants to mislead and deceive her, whereby plaintiff was induced to purchase said house and pay her money, I instruct you that you should find a verdict for money in favor of the plaintiff."

This instruction was wrong, in that it did not place the burthen of investigation upon the respondent. This court has unformly held that, especially where there was no fiduciary relation existing between the parties to the contract, and they were both standing on equal ground, a duty was

imposed upon the purchaser to make an examination of the
subject-matter of the contract; and that, when the opportunity
was furnished to make such examination and the purchaser
failed or neglected to do so, he could not rely upon repre-
sentations made by the seller. This, in substance, has been
the effect of a long and unbroken line of decisions. The
court proceeding said:

"I further instruct you that, if in the light of the fore-
going instructions, you find from the evidence that the plain-
tiff is entitled to recover on account of the false representa-
tions made by the defendants, if any, that she is entitled
to all compensatory loss and damage which you find that
she suffered and sustained as a direct consequence and result
of relying upon the false representations of the defendant,
if any."

This instruction, in view of the fact that the respondent had
alleged damages by reason of humiliation and outraged feel-
ings, both on account of herself and of being the mother of
two girls, and had also alleged damages for great mental
agony and grief on account of the position in which she
found herself placed, tended to submit to the jury a class
of damages which could not be collected in this kind of a
case. The only limitation that the court placed upon the
amount of damages, to the jury, was in the following:

"If you should find from a preponderance of the testi-
mony in this case for the plaintiff, you will find for her in
such sum as you think will compensate her for the damages
she has alleged she has sustained, but in no event can you
find for her a greater sum than was asked for in her com-
plaint."

Thus it will be seen that the jury, under the instruction of
the court, might very well have concluded that they had a
right to compensate her for the damages in relation to out-
raged feelings, etc., because they were damages which she
alleged she had sustained. The court did not, in any place
or at all, instruct the jury as to the proper measure of

damages in a case of this kind, or as to any measure of damages. It is hardly worth while to discuss the proposition that a portion of the damages alleged here, for humiliation and mental agony, are not such damages as can be obtained under a complaint of this character for misrepresentation in the sale of a house. The measure of damages for breach of warranty as to the character or quality of the property sold is, as a general rule, the difference between the actual value of the property and what its value would have been had it conformed to the warranty. Not only was there no instruction to the jury as to the measure of damages, but neither was there any proof upon which a jury could base an intelligent verdict. The verdict of the jury in this case for $1,350 could in no event be sustained, for the value of the property could not be presumed to have been more than the respondent paid for it, and she sold it, after running the business for eight months, for $400.

The verdict, as it will be seen, must have been arrived at through a misapprehension of what the true measure of damages in such a case was. Indeed, the whole case seems to have been a mistrial. There was really no testimony offered as to the damages alleged under the complaint, any more than the broad statement made by the respondent that she was damaged $1,350, which included the $750 which she paid for the house. Everything seemed to have been lost sight of in the attempt to show that two girls who roomed in the house were not of reputable character. They, however, left the house within a day or two after the incoming of the respondent, and there was no testimony showing that the alleged failure of the respondent to make the business pay was due to the presence of these girls at the time she bought the house. While the energies of the appellants seem to have been expended in attempting to show the reputation of the respondent through a period reaching back many years, for the evident purpose of showing that she was not the character of a woman that could be the

recipient of mental agony by reason of the embarrassing condition which she stated she found herself in when she took charge of the house; a question which, as we have indicated, was entirely outside of the issues of the cause.

For these reasons, the judgment must be reversed, and upon a retrial the testimony will be restricted to the questions at issue, and to the damages under the rule which we have announced. Reversed.

MOUNT, C. J., HADLEY, FULLERTON, RUDKIN, CROW, and ROOT, JJ., concur.