[No. 5687.  Decided December 28, 1905.]

J. A. IRBY, *Appellant,* v. J. H. TILSLEY *et al., Respondents.*[1]

FRAUD—ACTION FOR DAMAGES—FALSE REPRESENTATIONS AS TO MINE—INSPECTION BY VENDEE.  One who purchases stock in a mining company is not entitled to rescind the sale for fraudulent representations, where it appears that within a week or two he had made a full investigation of the mine and other properties of the company, expressed himself as satisfied, and purchased more stock and dealt in it, for himself and as agent on commissions at a profit, and did not commence an action for damages for more than a year, at which time the mine had proved unprofitable.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered May 31, 1904, in favor of the defendants, upon the verdict of a jury entered by direction of the court, dismissing an action for damages for false representations.  Affirmed.

*Peacock, Wells & Ludden,* for appellant.

*Richard M. Barnhart (Barnhart, Laughon & Pugh,* of counsel), for respondents.

CROW, J.—This action was instituted by appellant J. A. Irby, plaintiff below, against respondents J. H. Tilsley, William Lambert and The New Jersey Gold Mining & Milling Company, a corporation, defendants below, to recover damages for false and fraudulent representations made by respondents on certain sales of stock of said corporation.  On a jury trial, the court at the close of appellant's evidence sus-

[1] Reported in 83 Pac. 97.

tained a challenge thereto, and directed a verdict in favor of respondents. From a judgment entered on said directed verdict, this appeal has been taken.

Appellant produced evidence tending to show that said Mining Company, of which Lambert was president and Tilsley secretary, owned certain claims, near Wardner, Idaho, which it was operating, the principal office of the company, and the residence of all the parties, being at Spokane, Washington; that a two stamp mill had been erected, certain water power secured, and much work done; that on or about January 6, 1903, respondents Tilsley and Lambert approached appellant for the purpose of inducing him to invest in some of the stock of said company held by them; that they presented appellant with a printed pamphlet or prospectus which represented the property of said company to be a mine, and not a prospect; that the company had certain water rights capable of producing 250 horse power, and being used to run a forty stamp mill, which was to be installed in the near future, that the property was a free milling proposition, with two million dollars worth of ore in sight of an average value of from eight to fourteen dollars per ton, and that all these facts could be easily verified by an inspection of the property; that said respondents themselves made the same representations orally, further asserting the outlook to be even better than shown by the prospectus. Appellant testified that, relying on the truth of these statements, he on January 9, 1903, traded certain real estate in Spokane to respondents Lambert and Tilsley, for 9,000 shares of their stock, at ten cents per share, and also purchased 1,000 shares of treasury stock at the same price. He now claims that all the statements contained in the prospectus and made by respondents were false, and were at the time known by them to be false.

After carefully examining all the evidence, we conclude the trial court committed no error in directing a verdict for respondents. Without stating our conclusions as to whether

the evidence was sufficient to show the representations to have been false, we will proceed upon the assumption that it was sufficient for that purpose. Appellant testified that, within a week or two after he traded for said 10,000 shares of stock, he made a trip to the mine, remained there several days, examined the property, saw the mill, the water power, the tunnels and shafts, met and talked with the foreman and workmen, and procured samples of ore which he brought with him to Spokane. Shortly after his return, he met respondents, and instead of expressing any dissatisfaction with his investment or the property, he traded with respondents for 15,000 additional shares of their stock at the same price of 10 cents per share, and thereafter, at sundry times, acquired still more stock. He also agreed to, and did sell treasury stock for the company upon commission, and in doing so told prospective purchasers he had visited the mine, showing them samples of quartz with free gold visible which he had taken out. On cross-examination he testified in part as follows:

"Q. Didn't you show Mr. Castle Thompson at the time that you sold him a hundred dollars' worth of stock at 12½ cents a share, a piece of quartz with free gold visible to the naked eye, and tell him that you got that out of the mine yourself? A. I did. Q. Did you get that out of the mine yourself? A. I did."

He further testified that he had sold 10,000 shares of treasury stock to one Williams for 12½ cents per share earning for himself a commission of $200, and that he had made other sales of treasury stock, and his own stock at a profit. He told one Doust that, when he examined the mine, he found the work done as represented. On April 5th, 1904, after the commencement of this action and before trial, he sold 30,000 shares of his stock to one Sargensen for $1,500. There is some intimation in the record that Sargensen made this purchase for respondent Tilsley, but this does not clearly appear, although at the trial Tilsley, who was called as a

witness for appellant, claimed he then owned the stock. The dealings above enumerated are only a part of those made by appellant after his return from the mine, but are sufficient to show his course of procedure. During all this time the mine was operated by the company. In the summer of 1903 a larger stamp mill was installed, and operated until the following December, when, having proved unprofitable, it was shut down. Shortly thereafter appellant brought this action to recover losses actually sustained, and also damages to his business standing and reputation caused by his selling treasury stock to his friends.

Even though it be conceded that all the representations made by respondents prior to appellant's original purchase on January 9, 1903, were false, yet appellant is not entitled to recover. On his visit to the mine, he could see the situation for himself. By his subsequent acts he expressed entire satisfaction with his investment. He did not need to say he was satisfied. His actions spoke louder than words, and could not be misunderstood. If, within a reasonable time after his return from the mine, he had commenced an action either to rescind or to recover damages, he might have had some standing in a court of justice. Instead of this, he purchased more stock, and his rights should now be ascertained with reference to the knowledge he possessed and the situation as it existed at the time of his second purchase. He was not thereafter entitled to rely on representations made by respondents.

In *Zilke v. Woodley*, 36 Wash. 84, 78 Pac. 299, it appeared that appellant Zilke and his assignors employed respondent Woodley to locate them on certain timber claims, and made certain advance payments before seeing the land; after they were located by Woodley and had seen the land, they deposited certain drafts in a Spokane bank for collection, the proceeds to be passed to the credit of Woodley. When the bank collected the drafts both appellant and respondent claimed the money, which the bank then paid into

court under the provisions of Bal. Code, § 4843 *et seq.* By his pleadings and on the trial Zilke not only claimed the proceeds of the drafts, but also sought to recover the advances made. This court, speaking through Hadley, J., said:

"It is further claimed that it was error to confine the testimony of appellant concerning false representations of respondent as to the timber claims to the period after the parties returned from viewing the land. We think the court was right. Any representations made before the parties viewed the land were not pertinent, for the reason that, after viewing the land for themselves, they no longer had a right to rely upon such representations, and they thereafter proceeded in the light of their own knowledge from actual view of the premises and surroundings. This court has frequently held that one who has the means of knowledge before him, and who refuses or neglects to avail himself thereof, is prevented from asserting that he is defrauded."

We think this doctrine should be applied to appellant Irby. At all times after his return from the mine, he dealt at arms length, no fiduciary or confidential relation existing between him and respondents, and he cannot now claim any fraud based on false representations made either before or after he visited the mine. *Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Hulet v. Achey,* 39 Wash. 91, 80 Pac. 1105.

Appellant, however, testified that, when he visited the mine, he could not see the ore on the dump nor judge its value, as it was covered with a deep snow. He did see the walls in the tunnels and shafts, and took samples of ore therefrom. He also claims he knew nothing about a mine, but was compelled to rely on respondents' statements. But he did undertake an examination for the purpose of informing himself and exercising his own judgment; respondents

did not direct him, nor were they even present. He afterwards exhibited to prospective stock buyers samples of ore which he personally took from the mine. He was then making a commission on sales of treasury stock, and also a profit on his own stock. It is apparent from the record that appellant was satisfied until the mill closed. When his stock depreciated in its market value, then it was he first claimed he had been defrauded. We find no error in the record. The judgment is affirmed.

MOUNT, C. J., RUDKIN, FULLERTON, HADLEY, ROOT, and DUNBAR, JJ., concur.