[No. 6050. Decided September 14, 1906.]

OTTO HUBENTHAL *et al., Appellants,* v. SPOKANE & INLAND
RAILWAY COMPANY *et al., Respondents.*[1]

PLEADINGS—MOTION FOR JUDGMENT UPON—SUFFICIENCY OF CAUSE.
While the sufficiency of pleadings should not generally be tested by
motion for judgment thereon, the practice is proper where it is ap-
parent that no technical objection is made and that the pleadings
are incapable of amendment, and the parties elect to stand thereon
for that reason.

DEEDS—VALIDITY—FRAUD OR MISTAKE—EQUITABLE RELIEF—PLEAD-
INGS—SUFFICIENCY. A complaint by a grantor, who signed a deed
for a right of way drawn by the agents of the grantee, relying upon
representations that the deed contained all the agreements of the
parties, is insufficient to entitle the plaintiff to equitable relief on
the ground of fraud or mistake, where it simply appears that it did
not embody all the prior stipulations of the parties, no excuse for fail-
ure to read the contract, artifice, or relation of trust being alleged.

EVIDENCE — PAROL EVIDENCE—AFFECTING WRITING — DEEDS—EASE-
MENTS—COLLATERAL CONTRACT. Parol proof is inadmissible to show
that upon giving an absolute deed for a right of way, the grantee
agreed to maintain an underground passage through the fill for the
use of the owner; since oral testimony could not be admitted to limit
or qualify the grant; nor could an easement in real property be
created or proved by parol; nor could parol proof of a collateral
agreement be received to contradict the terms of the written agree-
ment.

INJUNCTION— AGAINST TRESPASS —PLEADING— NOMINAL DAMAGES.
In an action for an injunction, a complaint alleging that the grantee
of a right of way fifty feet wide is depositing earth and soil outside
the limits of the right of way upon plaintiff's premises, does not
state a cause of action warranting interference by a court of equity
where there is nothing to show the extent of the encroachment or
amount of the damages, or any facts warranting more than nominal
damages.

APPEAL — PRESERVATION OF GROUNDS — OBJECTIONS TO PLEADINGS.
Error in granting a motion for judgment on the pleadings, where
the objection should have been reached by motion to make more
definite and certain or by demurrer, is not ground for reversal when
the objection was not called to the attention of the trial court.

[1] Reported in 86 Pac. 955.

DISMISSAL AND NONSUIT—WITHOUT PREJUDICE. On granting judg-
ment of dismissal for defects in the complaint, the same should be
without prejudice to another action.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered October 14, 1905, in favor of the
defendants, on the pleadings, in an action to restrain the con-
struction of a grade or fill by a railroad company. Modified.

*Danson & Williams,* for appellants.

*Graves & Graves,* and *B. H. Kizer,* for respondents.

RUDKIN, J.—The complaint in this case contains two causes
of action. · As a first cause of action it alleges, in substance,
that the defendant Spokane & Inland Railway Company is
a corporation organized and existing under the laws of this
state, and is so organized for the purpose of constructing and
operating a steam and electric railway between the city of
Spokane in this state and the city of Moscow in the state of
Idaho; that the plaintiffs are the owners in fee of the S. E.
¼ of the S. E ¼ of Sec. 14, Tp. 24, N., R. 43, E. W. M.,
Spokane county;

"That early in the spring of 1905, the said defendant Spo-
kane & Inland Railway Company, a corporation, began ne-
gotiating with plaintiffs for the purpose of securing the right
to operate its said railway over and across the said real estate
aforesaid, and thereafter these plaintiffs and the said de-
fendant agreed that plaintiffs would execute and deliver to
said defendant corporation an instrument in writing con-
veying to them an easement and right of passage over the
said real estate for the purpose of operating its railway, upon
the distinct understanding and agreement that, in so exercis-
ing the right to said easement and right to operate its trains
over said land, that no fills should be made upon said land,
but that where depressions existed the railway company
should construct trestles to operate its trains over, and that
said trestles should be constructed in such manner as to inter-
fere as little as possible with the use of all of said lands by
plaintiffs, and that the right should be and remain in plain

tiffs at all times to use all land up to the said trestles and under the said trestles, so far as it would be possible without damaging the same, and further, that the fruit trees owned by plaintiffs and situated on said land should not be disturbed by the said railway company in so building its trestles, except as might be necessary by reason of the location of the timbers which it might be necessary for said railway company to use in constructing said trestles.

"That it was further agreed between the plaintiffs and said defendant corporation that, as a consideration for said easement so to be given said defendant corporation as aforesaid, and the damage that would result to plaintiffs by reason of the exercise of said easement, that the said defendant corporation should give to plaintiffs five shares of the capital stock of said defendant corporation, of the par value of one hundred dollars ($100) per share, and it was further agreed by and between plaintiffs and defendant corporation that the house owned and occupied by plaintiffs and situated on said real estate should be moved by the said defendant corporation at its own expense, to such a point as might be selected by plaintiffs and not exceeding three hundred (300) feet from the right of way, and that the said house should be so moved by defendant corporation at its own expense and placed upon a stone cellar as good as the one which was under said house at the time said agreement was entered into, and that defendant corporation should so move said house within one year from the date of said agreement, and it was further provided that should plaintiffs decide to permit the house to remain where it was at the time said agreement was made, that then the said defendant corporation should pay to plaintiffs the sum of one hundred dollars ($100) in lieu of the expense which it would have incurred had plaintiffs elected to have said house moved, as provided by said agreement, it being agreed that in the event plaintiffs elected to have said house moved that it should be moved without damage to the said house and placed in the same relative position as it occupied at the time of said agreement. . . . That at the time said agreement for the right of way was entered into between plaintiffs and defendant corporation, the said defendant corporation proposed to plaintiffs that they would reduce the said agreement to writing and would prepare the

necessary instrument for the purpose of carrying out said contract, and thereafter said defendant corporation did present to plaintiffs a certain agreement in writing, which said defendant corporation said embraced the agreement so made for the said right of way, and requested plaintiffs to sign the same, and plaintiffs, believing that the said instrument so presented contained the agreements made for said right of way, as above alleged, thereupon executed such agreement and the said defendant corporation took possession of the said instrument and at all times since has retained the same. That plaintiffs have no knowledge as to the exact contents of said agreement so signed, but signed and executed the same on the understanding and representations that it contained the agreements of the parties as above alleged.

"That after said instrument was so executed and taken possession of by said defendant corporation, the said defendant corporation, its servants, agents and employees and the defendants Porter Bros., as contractors for the construction of the railway right of way, entered upon the premises of the plaintiffs, as aforesaid, and commenced to make a fill in the depressions on said real estate and in making such fill they dumped and carried earth and stone upon the said depressions in the said real estate aforesaid to the height established by the engineers for the grade where said railway crosses plaintiffs' said land, said grade being established at the height of about forty-five (45) feet above the low land on plaintiffs' land above described, and the said defendants are now prosecuting the work of making such fill and are dumping earth and rock upon said real estate, notwithstanding the contract and agreement between plaintiffs and said defendant corporation, as aforesaid, for said right of way.

"That plaintiffs have no knowledge as to the exact contents of said written instrument so executed by them as aforesaid, but if said instrument fails to state the agreements and conditions of the agreement between plaintiffs and defendants, as above alleged, the omission so to state the said agreement was through the mistake of the said defendant corporation in preparing said instrument and in reducing to writing the agreements of the parties thereto, or through the culpable fraud of the said defendant corporation, its servants, agents, and employees, in preparing said instrument, and the said agree-

ments were omitted for the purpose of defrauding these plain-
tiffs, and the fact that the said agreements were omitted from
said instrument, if they were omitted, was without the knowl-
edge or consent of plaintiffs, and plaintiffs' attention was
never called to such omission."

The prayer of the complaint as to the first cause of action
was for an injunction, enjoining and restraining the defend-
ants from making any fill on the line of the right of way
therein described; for a mandatory injunction requiring the
removal of all earth or rock upon said right of way; and
for $500 damages. The answer to this cause of action admits
the plaintiffs' ownership of the lands therein described; ad-
mits the negotiations for the acquisition of a right of way
across said realty; admits that the plaintiffs were to receive
five shares of the capital stock of the defendant railway com-
pany for the right of way; admits that the railway company
agreed to move the plaintiffs' house as alleged or pay $100 in
lieu thereof; admits that the defendant railway company
caused a deed for such right of way to be prepared and re-
quested the plaintiffs to sign the same; admits that the plain-
tiffs did sign and deliver said deed to the railway company;
but denies each and every other allegation in this cause of
action. As an affirmative defense the defendants set forth a
copy of the deed executed by the plaintiffs to the defendant
railway company, which conveys a right of way across said
realty and contains the following covenants and stipulations
and none other:

"The grantor agrees to construct a roadway either under
or beyond the trestle at grade near the present roadway. The
grantee also agrees to pay the grantors five shares of stock
of said company for the above described land and also to
move the grantors' residence back from said right of way
not more than three hundred feet, and place the same upon
a stone cellar as good as the one now under said residence,
when so requested at any time after one year from date
hereof, but in case the grantors do not desire to have said

house moved, then the grantee agrees to pay $100, in addition to the five shares of stock of said company, in full of all damages. And the said grantors, for themselves, their heirs, administrators and assigns, do hereby release the grantee, its successors and assigns from all claims for any and all damages resulting to the lands through and across which the piece or strip of land hereby conveyed is located by reason of the location, grading, construction, maintenance and operation of a railway over and upon the premises hereby conveyed;"

and avers that said deed contains the whole contract between the plaintiffs and the defendant railway company, and that the grantee has performed all things by it to be performed and stands ready to do and perform all things which may be required of it hereafter under said deed. The reply admits the execution and delivery of the deed as alleged in the affirmative defense "except that in said writing the agreement was contained that the *grantee* should construct a roadway either under or beyond the trestle at grade near the present roadway." The use of the word grantor in the deed would seem from the context to be a clerical error, but the question is not material on this appeal. The reply substantially denies the other allegation of the affirmative defense.

The substance of the second cause of action is that on the 13th day of May, 1905, George Engle and wife conveyed a certain tract of land therein described to the plaintiffs herein by warranty deed, regularly executed and acknowledged and for a good and valuable consideration; that, at the time the plaintiffs received said deed and paid the consideration therefor and at the time the same was placed of record, there was no instrument of record showing that said Engle and wife or their predecessors in interest had conveyed away any part of said real estate and particularly no instrument showing that said Engle and wife had conveyed to the defendant railway company any of said real estate for right of way or other purposes; that at the time the plaintiffs received said deed, they were advised by said Engle and wife that a deed of

right of way had theretofore been given to said railway company for a strip of land fifty feet in width at the place where said company was proposing to operate its railway, and that the plaintiffs had no further knowledge of the rights of the defendant railway company except from the information so received, and that they made careful inquiry for the purpose of ascertaining what the facts were, and did not discover that the facts were different from those represented by said Engle and wife until long after plaintiffs' said deed had been filed for record; that at the time said Engle and wife executed and delivered said deed to the defendant railway company, said company as a consideration therefor agreed to establish and maintain a good, sufficient, and adequate underground crossing under the fill being made on said right of way in order to afford access from one portion of the said tract to the other; and that said Engle and wife informed the plaintiffs of said agreement at the time of their said purchase, and that said agreement was the only consideration for the conveyance of said right of way.   The complaint further alleges:

"That said right of way in so crossing said real estate above described crosses for a distance of about one thousand (1,000) feet over low land, where the grade of said defendant corporation has been established at a height of about fifty-five (55) feet above the surface of the earth, and said defendant corporation has entered upon said land in the construction of its said right of way, making a fill in said depression for the purpose of establishing its road-bed and in so making said fill is depositing soil and earth upon the real estate conveyed to these plaintiffs outside of the land so deeded for right of way purposes, and has been and is constructing culverts and other railway equipment beyond and outside of the said lines of said right of way and upon the land owned by the plaintiffs, as aforesaid."

It is further averred that the defendant railway company has repudiated the agreement to construct said underground crossing and is making the fill without any provision for such

crossing. The prayer of the complaint as to this cause of action is that the defendant railway company be directed to carry out its agreement with said Engle and wife and to construct said underground crossing as agreed upon, and that all the defendants be enjoined from depositing earth or rock on the lands of plaintiffs described in the second cause of action outside of the limits of said right of way. The answer and reply as to this cause of action are substantially similar to the answer and reply as to the former. We have thus stated the issues at length for the reason that judgment was entered on the pleadings in favor of the defendants, without the taking of proof. From such judgment the plaintiffs prosecute this appeal.

The first question discussed by the appellants is one of practice. It is claimed that the proper way to test the sufficiency of a pleading is by demurrer and not by motion for judgment on the pleadings. As an abstract proposition this is true. The practice of objecting to the introduction of testimony, or moving for judgment on the pleadings, because of some formal defect in the pleadings which may be cured by amendments is not to be commended. But where the motion for judgment goes to the substance of the action or defense and not to the mere form of allegation, there is no reason why the practice should not receive the sanction of the courts. If there is no cause of action or no defense, and no defect curable by amendment, the time of the court should not be taken up in hearing testimony that can avail nothing. Such is the case presented here. On the hearing of the motion for judgment on the pleadings, counsel for respondents clearly pointed out their objections to the substance of each cause of action. They were asked by counsel for appellants if they relied on any technical defect in the pleadings, and they replied that they did not. Counsel for appellants thereupon stated that if the complaint was not good, barring technical defects, no complaint could be made sufficient. Having thus elected

to stand on their pleadings, their rights must be determined by them.

The only question arising on the first cause of action is this: does the allegation,

"That at the time said agreement for the right of way was entered into between plaintiffs and defendant corporation, the said defendant corporation proposed to plaintiffs that they would reduce the said agreement to writing and would prepare the necessary instrument for the purpose of carrying out said contract, and thereafter said defendant corporation did present to plaintiffs a certain agreement in writing, which said defendant corporation said embraced the agreement so made for the said right of way, and requested plaintiffs to sign the same, and plaintiffs, believing that the said instrument so presented contained the agreements for said right of way as above alleged, thereupon executed such agreement and the said defendant corporation took possession of the said instrument, and at all times since has retained the same. That plaintiffs have no knowledge as to the exact contents of said agreement so signed, but signed and executed the same on the understanding and representations that it contained the agreements of the parties as above alleged;"

entitle the appellants to equitable relief on the ground of fraud or mistake, simply because the agreement does not embody all the prior stipulations of the parties? We are of opinion that it does not. In *Washington Central Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366, this court said:

"Conceding that these representations were false, and conceding that the purchaser relied upon them, there is not yet enough shown, it seems to us, in this answer to give the defendant relief. There is no fiduciary relation between the seller and the buyer alleged. It is not alleged that the buyer was in such a position that he was unable to make an investigation concerning the truth or falsity of these alleged representations. So far as the allegations of the answer are concerned, there is nothing to show that the land was not at hand when this contract was made, and that it could not, by the use of ordinary prudence, have been investigated by the purchaser; and in cases of this kind, it seems to us that parties

must exercise ordinary business sense, and the faculties which are given to them for the purpose of transacting business; and that they cannot call upon the law to stand *in loco parentis* to them in the ordinary transactions of business, and their ordinary dealings with their fellowmen.  .  .  .  If people having eyes refuse to open them and look, and having understanding refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

The rule above announced has been reiterated in many subsequent cases. *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Hulet v. Achey,* 39 Wash. 91, 80 Pac. 1105; *Lake v. Churchill,* 39 Wash. 318, 81 Pac. 849; *Walsh v. Meyer,* 40 Wash. 650, 82 Pac. 938. True, in nearly all of these cases the false representations related to the quality, quantity, or condition of property embraced in a contract of sale or deed, but if a party cannot rely upon the representations of others as to such matters when the means of investigation are at hand, should not the rule apply with even greater strictness where an attempt is made to avoid the effect of a written contract which a party has signed, relying solely upon the representations of another as to its contents. In *McCormack v. Molburg,* 43 Iowa 461, the plea of fraud or mistake was even stronger than in this case. A demurrer was sustained to the plea and in affirming the judgment the court said:

"In *Bell v. Byerson,* 11 Iowa 233, it is said if the means of knowledge of the alleged fraud were equally open to both parties the law will not interfere to protect the negligent; and in *Rogers v. Place,* 29 Ind. 577, it is said if no device is used to put him off his guard, a party who, having capacity to read an instrument, signs it without reading, places him-

self beyond legal relief. 'If the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is remediless.' 2 Parsons on Contract, 772; Kerr on Fraud and Mistake, 77. To the same effect is the late case of *Nebeker v. Cutsinger,* 48 Ind. 436. The defendant does not state that plaintiffs used any artifice to prevent him from reading the contract, nor does he state that he was unacquainted with the English language, or that he could not read. In fact no excuse whatever is given, except that he signed the contract relying on the representation of plaintiffs as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly. The effect of such a rule as that claimed by appellant would be to render written contracts of but little practical value over those existing in parol only. The authorities cited by counsel for the appellant are not in point. In *Walker v. Ebert,* 29 Wis. 194, the defendant was a German by birth and education and unable to read the English language. With scarcely an exception, where the rule has apparently been recognized different from that herein established, some such exception will be found to exist, or some artifice used to obtain the signature of the party or to prevent him from reading the contract. None such exist in this case, and the judgment of circuit court must be affirmed."

Without reviewing all the cases cited, it will be found that in nearly all of them appears some fact or circumstance tending to show fraud or mistake aside from the mere reliance on the representation of the other party to the contract as to its contents, such as inability to read or understand the language of the contract, a relation of trust or confidence between the parties, or some artifice used to obtain the signature of the party or prevent him from reading the contract. Thus in *Lilienthal v. Herren,* 42 Wash. 209, 84 Pac. 829, the defendant had worked for the plaintiffs and was well acquainted with them; the contract was very long and involved, and the court said that even had the defendant read it, it was doubtful if he could have discovered that it conveyed hops already

sold. In *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, the court said:

"The court found that appellants were people of, or above. average intelligence, and found that Moody was an utter stranger to them prior to the commencement of the negotiations with regard to the purchase of the land; that they knew, or had opportunity to know, of all that was in the contract, and of all that was in the receipt, and that there was no fraud or misrepresentation or overreaching, and that appellants were not in a position to be heard to say that they did not know what they 'were signing. We reach a different conclusion from that of the trial court, but are able to do so, we admit, with considerable difficulty. Ordinarily, when people of average intelligence sign instruments which they have an opportunity ·to read, but do not, they should not be afterwards permitted to say that they did not know what they were signing. If this contract did not contain a provision which we deem to be absolutely unconscionable, and one which no intelligent vendor would knowingly have subscribed to, we would not be disposed to listen 'to any claim on the part of these appellants that they did not know of the contents of this contract."

·We are satisfied, therefore, that there is no error in the court's ruling as to the first cause of action.

As to the second cause of action, it is alleged that the respondent company agreed to construct and maintain an underground passage through the fill in the right of way for the use of the owner of the adjacent property. Proof of these facts on the part of the appellants would tend to show either that their grantors reserved a right of way or easement over the ·estate granted to the respondent company, or that the respondent company agreed to grant the owners of the adjoining property an easement or right of way over the property conveyed. If the former, oral testimony would not be admissible to limit or qualify the estate granted.

"A deed which is upon its face an absolute grant is not subject to have reservations or limitations engrafted ·thereon by parol or extrinsic evidence of intentions, understandings,

or agreements contradictory to or at variance with its language." 17 Cyc. 620.

If the latter, an easement in real property cannot be created or proved by parol. *Hathaway v. Yakima Water etc. Co.,* 14 Wash. 469, 44 Pac. 896, 53 Am. St. 847, and cases cited. Nor is this a case where parol testimony is competent to establish some collateral agreement or undertaking.

"In order to let in evidence of a collateral agreement between the parties, such agreement must be consistent with the terms of the writing; and the evidence must not tend to vary or contradict the terms of the written instrument or to defeat its operation." 17 Cyc. 714.

The only effect of proving this agreement would be to contradict the terms of the grant and defeat in a measure the operation of the deed, or to establish an easement by parol.

The last contention of the appellants is that the allegation in the second cause of action that the defendant corporation in making the fill on its right of way,

"is depositing soil and earth upon the real estate conveyed to these plaintiffs outside of the land so deeded for right of way purposes, and has been and is constructing culverts and other railway equipment beyond and outside of the said lines of said right of way and upon the lands owned by these plaintiffs, as aforesaid,"

states a cause of action in any event. It may well be doubted whether this allegation is sufficient to entitle the appellants to equitable relief. There is nothing in the complaint to show the extent of the encroachment, or that the trespass is wilful, or that there is any threat to continue the acts complained of in the future. Courts of equity only interfere to prevent threatened injuries, not to redress past wrongs. If it be maintained that an action at law for damages is stated, the amount of damages is not alleged, nor are there any facts stated that would warrant a recovery for more than nominal

damages. Of course, objections of this kind should be reached by motion to make more definite and certain, or by demurrer, and not by motion for judgment on the pleadings; but it is manifest to us that this objection and this feature of the complaint were not called to the attention of the trial court, and for that reason we do not think the judgment should be reversed on account of this allegation. The judgment of dismissal should be modified, however, so that no prejudice can result to the appellants in any future action for injuries committed outside the limits of the right of way, if any, and as thus modified, the judgment is affirmed. Costs to the respondents.

MOUNT, C. J., FULLERTON, HADLEY, CROW, and DUNBAR, JJ., concur.