[No. 12528. Department One. November 2, 1915.]

J. C. RIGHTOR, *Respondent,* v. H. H. WARD, *Appellant.*[1]

PLEADING—DEFINITENESS—OBJECTIONS—WAIVER. Although allegations of fraud and misrepresentation are so general as to be subject to motion or demurrer, the objection will be deemed waived if not made until trial.

INSURANCE—AGENTS—CONTRACT OF EMPLOYMENT—FRAUD—EVIDENCE—SUFFICIENCY. A contract employing an insurance solicitor is sufficiently shown to have been obtained by falsely representing that he was, at the time, earning $4,000 a year as a salesman, when in fact he was earning but $125 a month, and the employer testified that he relied upon the representation and would not have employed him except for it.

SAME—EMPLOYMENT OF AGENT—FRAUD—VALIDITY OF CONTRACT. The termination of a solicitor's contract of employment before the end of the term because he could not make "good," does not entitle the solicitor to recover the agreed salary, where the contract was vitiated by his fraudulent representations in obtaining it.

SAME—EMPLOYMENT OF AGENT—FRAUD—RECOVERY OF SALARY. An insurance company cannot recover salary paid to a solicitor under a contract obtained by fraud, where he was allowed to continue in the service nine months, it being usual to allow but five or six months to make "good," and was then discharged because he could not make "good," salary payments having been made during the nine months in reliance upon the officer's own judgment as to what the solicitor might do in the future.

Appeal from a judgment of the superior court for King county, Humphries, J., entered May 23, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

[1]Reported in 152 Pac. 332.

*Earl C. Demoss,* for appellant.

*Peterson & Macbride,* for respondent.

Mount, J.—In November, 1912, appellant was the manager of The Pacific Mutual Life Insurance Company, with headquarters at Seattle and Portland. Respondent was a salesman residing at Memphis, Tennessee. Appellant, being desirous of employing an agent to solicit insurance, entered into correspondence with respondent, and later authorized several representatives of the insurance company to interview respondent at Memphis. These interviews were had and respondent informed the representatives of the insurance company that he was making approximately $4,000 a year, he being at that time engaged in selling soda fountain supplies. The results of the interviews were communicated to appellant, and after some negotiation by correspondence, a contract was entered into on November 20, 1912, whereby respondent was to act as appellant's agent in soliciting insurance, and receive therefor a salary of $150 a month, together with certain commissions. Respondent denies that he led appellant to believe that he was earning $4,000 a year as a salesman, but says that, while he was earning approximately that amount at the time mentioned, and so informed appellant, the greater part of his income was from speculation in real estate. The record shows, however, that, even as late as June 26, 1913, more than six months after respondent had commenced work under the contract, appellant wrote asking the direct question, "What was the actual amount of your maximum earnings with both Parke, Davis & Company and the Liquid Carbonic Company?" In answer to this, respondent replied, "I cannot see why you would ask me to tell you exactly what my revenues were from my former connections as I have *told you* several times that I had earned over $4,000 a year." At the trial, in answering inquiries as to his earning capacity, respondent testified that his earnings as a sales-

man, at the time he was negotiating for the contract with appellant, were approximately $1,800 a year.

The contract was terminated September 30, 1913, by a written notice from appellant to respondent, which was in accordance with the terms of the contract. Respondent thereupon made a demand for his September salary of $150, which being refused, this action was brought. Appellant interposed the defense of fraud, and, by way of counterclaim, sought to recover back all payments made under the contract, less certain earned commissions. The trial court found respondent was entitled to recover his salary under the contract for the month of September, but permitted appellant to set off $5 which it found due him.

We will first notice respondent's claim that the allegations of misrepresentation and fraud, as constituting a defense and counterclaim, are too general to raise an issue, and for this reason his objection to the introduction of evidence in support thereof should have been sustained. It cannot be denied that the allegations are pleaded in the most general language, and would be subject to a motion to make more definite and certain; but as respondent did not complain of the pleading until the time of trial, we are constrained to follow the rule announced in *Walsh v. Meyer*, 40 Wash. 650, 82 Pac. 938, and sustain the ruling of the lower court in permitting the introduction of evidence. In the *Walsh* case, in considering the insufficiency of a complaint alleging fraud and misrepresentation, we said:

"After the issues were formed, the appellants objected to any testimony being offered under the allegations of the complaint, stating that it did not constitute a cause of action. This objection was overruled, and the action of the court in that respect constitutes the second assignment of error on this appeal. It may be conceded that the complaint in this case is exceedingly meager, and we will not now decide upon its sufficiency if it had been challenged by demurrer. But this court will not scan a complaint too critically where there has been no demurrer interposed, but the case has been al-

lowed to go to trial to the extent of settling the pleadings and creating the expense of a convocation of the witnesses, as we do not regard such a practice as commendable."

The only case which involves the pleading of fraud, cited by respondent in support of his objection to the introduction of evidence, is *Cade v. Head Camp W. O. W.*, 27 Wash. 218, 67 Pac. 603, but in that case a demurrer. to the complaint was sustained. This fact necessarily distinguishes it from the case at bar. We think respondent waived whatever defect there was in appellant's plea of his defense and counterclaim by failing to move against the pleading.

The record clearly showing that respondent misrepresented his former earning capacity, the next question is, Was such misrepresentation material? To be material, it must be shown to have been an inducing cause of the employment, and that had appellant known the representation of respondent as to his former earning capacity to have been false, the contract would not have been entered into. Upon this point we quote appellant's testimony in part as follows:

· "I would never have made a contract with a man that could not sell goods. He represented that in his former employment he was worth from four to six thousand dollars a year, and I supposed he was a salesman. I later learned he never made over $125 a month in his former capacities. Had I known that, I never would have made the contract with him which I did. . . . If what he had told me was true, that he made four to six thousand dollars a year as a salesman, I naturally would say to myself, if he could do that in soda fountains, he is a salesman. . . . He got $150 a month out of me because of his statements of his ability as a salesman in another line of work, and the whole foundation fell when those other statements came out. Q. Would you have employed Rightor with a guarantee had it not been for these statements? A. I wouldn't have. Q. You would have employed him on a straight commission basis? A. I always do that. . . . He never would have gotten a guarantee out of me if it hadn't been for these statements."

This testimony is, we think, sufficient to sustain the burden upon appellant to show that he gave respondent a salary contract instead of the usual commission contract, relying solely upon respondent's representation as to his former earning capacity, which showed him to be an exceptional salesman. It necessarily follows that the contract is vitiated by reason of the material misrepresentation entering into it, and respondent cannot make it the basis of his recovery.

The remaining question is that of appellant's right to recover upon his counterclaim all salary paid under the contract, less certain earned commissions. It may be conceded that, ordinarily, appellant could recover back these payments, the contract being vitiated by reason of the material misrepresentation, but upon the record as made, we do not think he has shown loss or damage sufficient to entitle him to the relief asked.

The affirmative defense alleges that the contract was terminated immediately upon the fraud being discovered, in October, 1913. Appellant testified that he did not discover respondent's statements were false until October, 1913, and thereafter refused to allow respondent to continue in his employ. The facts are, however, that appellant terminated the contract by written notice on August 23, 1913, many days prior to the discovery of the fraud. Respondent ceased working for appellant on September 30, 1913. In the notice of termination, appellant says that "beginning October first your contract will, of necessity, be on a purely commission basis, as per its terms." Certainly this notice shows beyond question that appellant did not terminate respondent's contract for fraud and thereafter refuse to continue his agency, for its terms provide that he should continue in the employment of appellant after the termination of the contract, but only on a commission basis. It is manifest that the contract was terminated for the reason that appellant was convinced respondent could not make "good" as an insurance solicitor, and for this reason he could no longer carry him on a salary.

This cannot, however, avail in forcing a recovery under the contract, for the reason that the law will not permit one to profit by his own fraudulent misrepresentation.

Appellant also testified that "An insurance solicitor doesn't always get results the first two or three months. In fact, I go beyond that, and give a man five or six months to make good in." It is evident that, in this instance, appellant went farther than the usual "five or six months" in which he gave a man to make "good," and allowed respondent nine months in which to show whether or not he had the ability to sell insurance. Having thus permitted the contract to continue in force and to make salary payments thereunder, during all of which time he relied upon his own judgment as to what respondent would do in the future, he should not now be allowed to recover the loss he himself is responsible for. It is true that appellant affirmatively pleaded in support of his counterclaims that respondent made false reports of his progress, and also that he did not devote all of his time to the objects of the agency, but we are inclined to agree with the trial court that the proof in support of these allegations is insufficient.

The lower court found that there was due appellant from respondent the sum of $5 for medical fees upon an insurance policy which was returned. Respondent admits he owes this sum to appellant, and we will therefore affirm the action of the trial court with regard to it.

The judgment is reversed, with directions to the lower court to render judgment in favor of appellant against respondent in the sum of $5.

MORRIS, C. J., MAIN, and HOLCOMB, JJ., concur.