[No. 8740.   Department Two.   August 5, 1910.]

WILLIAM J. BEST *et al.*, *Respondents*, v. JAMES W. OFFIELD *et al.*, *Appellants.*[1]

VENDOR AND PURCHASER—RESCISSION—FRAUD. The purchasers of an orchard are entitled to a rescission of the contract for fraud by the vendor in representing that it contained 70 acres in orchard when it contained less than fifty acres, and it appears that the area in orchard was very difficult of determination except by an accurate survey, that the vendors were or should have been familiar with the facts, having worked the farm for thirty years, while the purchasers relied on the representations, were entirely unfamiliar with the fruit business, and sought a rescission as soon as they suspected and ascertained the truth.

Appeal from a judgment of the superior court for Garfield county, Miller, J., entered October 26, 1909, upon findings in favor of the plaintiffs, after a trial before the court and a jury, in an action to rescind a contract. Affirmed.

*Cain & Hurspool*, for appellants.

*Skuse & Morrill*, for respondents.

DUNBAR, J.—This is an action by William J. Best and wife, for the rescission, for fraudulent misrepresentation, of a contract of sale whereby plaintiffs agreed to purchase, and the defendants J. W. Offield and wife agreed to sell, a certain orchard and land in Garfield county, Washington; the plaintiffs seeking to recover the amount of the purchase money already paid, together with expenses incurred in connection with the purchase and expenditures made upon the land while they were in possession. The misrepresentations set up in the complaint and relied on at the trial were: (1) misrepresentations as to the amount of land, in the different varieties of fruit in the orchard as a whole, and the amount of land in cultivation outside of the orchard; (2) misrepresentations as to the quality of fruit grown in the orchard; (3) misrep-

[1]Reported in 110 Pac. 17.

resentations as to the whole number of acres of fruit embraced in the orchard; (4) misrepresentations as to the suffi-
ciency of water for irrigation; and (5) misrepresentations as
to the amount and character of the personal property included in the transaction.  The defendants answered, denying the making of the misrepresentations alleged, setting up
the fact that the plaintiffs inspected the orchard, made outside inquiries, and relied on their own judgment in making
the purchase; and asking for a forfeiture of the contract of
sale, on the ground that plaintiffs had failed to make the
second payment under the contract, and had abandoned the
land; and for damages for negligence and carelessness in
pruning the vineyard and orchard.  The case was tried to a
jury on questions of fact.  Certain special interrogatories
were submitted to the jury, which, with the answers thereto,
were as follows:

"(1)  Did the defendants James W. Offield and Nettie
Offield, or either of them, at or before the making of the
contract in question, make the plaintiffs, or either of them,
any positive statements by which they, or either of them, materially misrepresented to the plaintiffs the true facts regarding the lands, premises and property which was the subject of the contract in question?  Answer: Yes.

"(2)  How much expense did the plaintiffs incur in caring
for and making improvements upon said land and premises,
and in caring for and feeding the stock while in possession
thereof?   A.  $416.70.

"(3)  Were the plaintiffs, William J. Best and Emma L.
Best negligent in the care of said premises during the time
they were in possession of the same and, if so, how much were
defendants damaged thereby?   A.  None."

The court adopted the findings of the jury, and found that
James W. Offield made representations to the plaintiffs in
regard to material facts concerning the lands and premises
which are the subject of the agreement in question, to wit,
among other things, in regard to the number of acres thereof
growing to fruit and grapes, which were false; that such
representations were known by defendants to be false when

made, and were so made by said defendant to induce plain-
tiffs to enter into said agreement; that the plaintiffs in act-
ing on said representations were ignorant of the falsity of
the said representations, and reasonably believed them to be
true; that the plaintiffs had expended $416.70 in the care
of the farm; that they were not negligent in the care of
said premises and property during the time they were in
possession of the same; that the defendants did not suffer
any damages therefrom; that plaintiffs were not familiar
with fruit growing, or with fruit trees, or with the kind of
property which was the subject of the agreement in ques-
tion; that this was known to the defendants during the time
the negotiations were pending, and that as soon as plaintiffs
ascertained that the representations made to them were false,
they served notice upon the defendants of the rescission of
the contract.    Upon these findings, conclusions of law were
found, and judgment was entered in favor of the plaintiffs
for recovery of the money paid, for a rescission of the con-
tract, for the sum of $416.70 with interest from and since
the 1st day of March, 1909, and for costs.    From this judg-
ment, this appeal is taken.

The testimony shows, that the plaintiff William J. Best
examined this farm in September; that at that time he stayed
upon the farm about two days, in company with the defend-
ant James W. Offield; that a great deal of the time it was
raining hard, so that it was difficult to get around on the
premises; that between that time and before the final execu-
tion of the contract, Emma L. Best visited the farm, her
testimony being that she stayed there two days, and other
testimony of the defendants being to the effect that she was
there some days longer; that the contract was finally en-
tered into in November, and that the parties plaintiff took
possession of the farm about the 25th of November, and pro-
ceeded to go to work upon the orchard; that some time after
taking possession, the plaintiffs began to suspect that mis-
representations had been made as to the number of acres em-

braced in the orchard, as to the quality of fruit trees, and
as to the alleged representations that there was sufficient
water to irrigate the premises; that in February, so strong
had this conviction grown, that William J. Best, aided by
an employee, undertook to survey the orchard by using a
rude pole of some kind, and from such survey became satis-
fied that there was not the amount of land in orchard that
had been represented, and gave notice to the defendants that
he would rescind the contract; that subsequently to this and
prior to the trial of the action, a survey was made under the
supervision of a competent surveyor, and it was ascertained
and proven, we think beyond a question, that the amount of
land in controversy instead of being seventy acres, was in
reality 48.41 acres, which included the grapes and the or-
chard generally.

Without reviewing in detail this testimony which we have
particularly examined, we are satisfied that the special find-
ings of the jury were justified, and that the findings made
by the court were justified by the testimony; that, to say
nothing of the representations concerning the quantity of
water available for irrigation, and the quality of the trees,
it was represented to the plaintiffs that there were seventy
acres set out in orchard, and that they acted on this repre-
sentation. This is positively sworn to by the plaintiffs and
other witnesses who were present at the time the representa-
tions were made, and is in reality not denied by the defendant
James W. Offield. But his contention is that he did not state
as a positive fact that there were seventy acres, but that he
believed there were; that he was solicited by the plaintiffs to
guarantee to them that there were seventy acres, and refused
to do so, but told them that there were seventy acres or
about seventy acres. This statement in relation to the
guaranty is emphatically denied by the plaintiffs, and by
other witnesses who were present at the time of the conversa-
tion spoken of, and the jury evidently believed and were
justified, we think, in believing, that there was no such con-

versation had at that time, and that there was in effect a
positive representation, upon which the parties plaintiff acted,
that there were seventy acres cultivated to orchard.

In regard to the right of plaintiffs to act upon this repre-
sentation there is quite a diversity of authority, and it is
difficult to lay down a general rule because there are par-
ticular circumstances controlling almost every individual case.
*Van Horn v. O'Connor,* 42 Wash. 513, 85 Pac. 260, a case
which is cited and relied upon strongly by the appellants,
and which in some of its circumstances it must be said is
similar to the case at bar, was where O'Connor represented
to Van Horn that there were two hundred and forty acres
of land in cultivation in the half section which Van Horn was
purchasing, that there were some thirty acres more which
could be cultivated, and that there would be not over fifty
or sixty acres of waste land.  These statements proved to be
not exactly correct, and it was shown that there was not as
much land under cultivation as had been represented.  The
trial court found that Van Horn had no cause of action, and
that judgment was affirmed by this court, the court saying:

"It is clear from appellant F. M. Van Horn's evidence that
he obtained all the land which was shown him, and some which
was stated did not go with the half section purchased.  But
the important and controlling question in the case is whether,
after examining the land, appellant may complain because
there is not as much tillable land as was represented by the
respondents.  This court has frequently held that, where
representations are made as a matter of opinion, there is no
liability for misrepresentations, where the parties are dealing
at arm's length and the means of knowledge are as open to
one party as to the other. . . . But, where the representa-
tions made are of material facts within the knowledge of the
vendor, and entirely without the knowledge of the vendee, and
where the circumstances are such as reasonably call for a
reliance thereon, the rule is that the vendee may rely upon
the representations of the vendor."

The court was of the opinion in that case that there was
no confidential relation existing between Mr. O'Connor and

Mr. Van Horn, that the representations made were expressions of opinion about facts which were as open and obvious to the appellants as to the respondents, and that appellants had an opportunity to obtain the facts about which representations were made, and for that reason dismissed the action.

Conceding here the correctness of the principles of law laid down in that case, we think this case falls within the second principle announced, viz., that the representations made were material facts within the knowledge of the vendor and entirely without the knowledge of the vendee, and where the circumstances reasonably called for a reliance upon such representations. It makes no difference whether the representations made were known by the vendor, as found by the court in this instance, to be false, or not. The effect on the purchaser would be the same, and if he had a right, under all the circumstances, to rely upon them, and did rely and act upon them, he can recover. There is a difference between the right of a vendee to rely upon the representations of the vendor where the means of determining the truth of the representations are at hand and it is easily determined, as in the case just cited, and a case of this kind where, as shown by the testimony, these plaintiffs were entirely unfamiliar with the fruit business, having come from a locality where orchards were not grown. They stated to the defendant at the time of the transaction that they knew nothing about the business, and when they were down examining the orchard, told him that they did not know a peach tree from a cherry tree, and in many instances he pointed out to them the difference in the trees.

This case falls more squarely within the rule of law announced in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054. There the action was instituted to recover damages for false representations made by the defendants in the negotiations leading up to the contract of sale, both as to the quantity of land to be conveyed and the number of acres

susceptible of irrigation from the water company's canal by gravity flow. The defendants represented that the tract to be conveyed by the water company contained sixty acres in all, and that the sixty acres were so situated in reference to the water company's canal that the entire tract could be irrigated therefrom by gravity flow. It eventuated that in fact the tract contained only 52.64 acres, and 28.24 acres of this were above the level of the canal and could not be irrigated therefrom. It also appeared that the purchaser visited the land, accompanied by certain of the grantors, and viewed the premises in a general way. But it appeared that the portion of the land which could not be irrigated from the canal could only be ascertained by an accurate survey, as we think it appears in this case that the area of this orchard could only be obtained by an accurate survey. The court in the trial of that case, upon the close of the plaintiff's testimony, granted a nonsuit to the defendant. In reversing the judgment of the court, it was said:

"Nor can we agree with the court below that the doctrine of *caveat emptor* applies to the representations made by the respondents to the effect that the entire tract was under the level of the canal and susceptible of irrigation therefrom. Strong language has been used by this and other courts in defining the duties of purchasers from which it might be inferred that vendors have an unbridled license to lie and deceive, but such has never been the law, and the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor*";

citing *Strand v. Griffith*, 97 Fed. 854, and *Noyes v. Belding*, 5 S. D. 603, 59 N. W. 1069, where it was said:

"The unmistakable drift is towards the doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim";

also citing 14 Am. & Eng. Ency. Law (2d ed.), p. 120, where the rule is stated as follows:

"By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own

knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself."

The opinion concludes:

"All the cases agree that the purchaser may rely upon representations of the vendor where the property is at a distance, or where for any other reason the falsity of the representations are not readily ascertainable; . . . "

It appears that the orchard in this case was in an irregular or zigzag shape, and that it was a very difficult matter to determine its area. It is claimed that it was easily within the power of the plaintiffs to ascertain whether there were seventy acres in the orchard; but such ascertainment could have been made only by scientific survey. It plainly appears from the testimony that, either the representations made by the defendants were false and were known by them to be false when made, or else it was a matter difficult of ascertainment, for the defendants had owned and operated this farm for thirty years, setting out in different years different portions of this orchard, and if they in this long period of operation were not aware of this discrepancy, it is unreasonable to hold these plaintiffs, who were entirely new to the business, to a speedy determination of the area. It was not a slight discrepancy in representation. The planting and rearing of an orchard to a bearing age is a costly business, and the difference between seventy acres of land planted to fruit trees and 48.40 acres is almost a third difference in area. When it is admitted that the purchase price of this land was $35,000, and that practically all the value of the land was in the orchard, it is seen that the plaintiffs were deprived of nearly one-third of the value of their purchase as they understood it; so that the only debatable question in this case is, whether they acted with due diligence in ascertaining the falsity of the representations. An orchard of forty-odd acres

of growing fruit, especially when it is in the irregular shape that this orchard was shown to be, is liable to mislead an inexperienced person concerning its area, and under all the circumstances of this case we think that there was no such laches on the part of the plaintiffs as would prevent them from bringing this action for rescission upon the grounds alleged.

The judgment will therefore be affirmed.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.