[No. 10827.   Department Two.   June 2, 1913.]

MILLIE ARROWSMITH, *Executrix etc., Respondent and Cross-Appellant*, v. N. C. NELSON et al., *Appellants*.[1]

FRAUD—PLEADING—COMPLAINT—SUFFICIENCY. An allegation that defendants knew or ought to have known that representations inducing a sale of land were false, is sufficient to raise an issue of fraud, especially where the complaint was so treated below at the trial, and must be liberally construed.

PLEADING — COMPLAINT — INCONSISTENT CAUSES — OBJECTIONS — WAIVER. In the absence of a motion to strike, a complaint alleging, as a first cause of action, a mutual mistake in a deed, and as a second cause of action, fraud by false representations in pointing out the boundaries, thereby inducing the sale, is not inconsistent and is sufficient to raise the issue of fraud.

FRAUD—SALE OF LAND—FALSE REPRESENTATIONS—EVIDENCE—SUFFICIENCY. An owner of land participates in fraudulent representations by the agents as to the area, inducing a sale, where he was present when the representations were made, and knew the number of acres expected by the purchasers, and that the tract did not con-

[1]Reported in 132 Pac. 743.

tain the area represented, and did not advise the purchasers of the fact.

SAME—DEFENSES—MUTUAL MISTAKE. Liability for fraudulent representations inducing a sale of land cannot be escaped on the ground of mutual mistake by the one who had the better means of knowing and assumed to know the material fact, and misrepresented it.

VENDOR AND PURCHASER—REMEDIES OF PURCHASER—DEFICIENCY—SALES IN GROSS—FRAUD. A sale by "metes and bounds" of "forty acres more or less," is not a sale in gross precluding damages for a deficiency, where the purchaser was induced to take the land by false representations that the tract contained forty acres, while it in fact contained only about thirty-one acres, and was irregular in shape, requiring a survey to determine the area.

Cross-appeals from a judgment of the superior court for Lewis county, Rice, J., entered July 9, 1912, upon findings in favor of the plaintiff for damages by reason of fraud in the sale of land. Affirmed.

*Tucker & Hyland* (*Aubrey Levy*, of counsel), for appellants.

*B. H. Rhodes* (*Totten & Rozema*, of counsel), for appellant West Coast Land Company.

*Troy & Sturdevant*, for respondent.

ELLIS, J.—The plaintiff brought this action to recover damages for a shortage on a purchase of land, alleging a misrepresentation by the defendants as to the quantity of land as an inducement to the purchase, and in reliance upon which the purchase was made. The evidence shows that the defendants Nelson had, for about four years owned a tract of land in Lewis county, Washington, described as follows:

"Commencing at the southwest corner of the S. E. 1/4 of the S. E. 1/4 of Sec. 27, Twp. 15 N., R. 2 W., W. M., thence north to the northwest corner of the S. E. 1/4 of the S. E. 1/4 of said section, thence west 120 rods to the northwest corner of the E. 1/2 of the S. E. 1/4 of the S. W. 1/4 of said section, thence south to Haniford creek; thence along the north side of Haniford creek east to its intersection with the south

boundary line of said section 27; thence east on said south boundary line of said section to place of beginning";

that, sometime in the fall of 1909, they had listed this land with the defendant West Coast Land Company for sale; that, late in the fall of that year, negotiations were opened with the plaintiff and her husband, since deceased, for a sale to them of the entire tract, but the plaintiff and her husband decided later that they would take only the east forty acres of the land with the dwelling house, orchard, chicken house, barn and certain personal property, the land company agreeing to take the balance of the land, as the Nelsons desired to sell the entire tract. In view of the fact that the Arrowsmiths were securing the improvements and the personal property it was agreed that they should pay $5,250 for the east forty acres of the land and the personal property, while the land company was to pay $2,750 for the balance of the land, supposed to contain approximately forty acres.

The evidence is in direct conflict as to what representations were made by the defendants Nelson and the land company as inducing the purchase by the Arrowsmiths. Mrs. Arrowsmith testified that, when the land was shown to her and her husband, the defendant Nelson and one Kanters, president of the land company, were both present, and both assured the Arrowsmiths that the east half of the land would contain forty acres, and pointed out to them, by reference to a certain gate, where the dividing line would run, which line was some 330 feet west of the dwelling house upon the land. She also testified that both Nelson and Kanters pointed out a tract of ten acres lying south of Haniford creek as being a part of the supposed eighty acres, and as being a part of the land which the Arrowsmiths were to receive on a division of the tract. Both Nelson and Kanters denied that they made any representations to the Arrowsmiths as to the number of acres in the land, though Kanters admitted that it was understood at the time that the Arrowsmiths were to receive forty acres. One Allenger, secretary of the West

Coast Land Company, also testified that it was understood by all parties in the negotiations leading up to the purchase that the Arrowsmiths were to receive forty acres of land. Nelson positively denied that he represented that there were eighty acres in the entire tract and that he represented that he owned any land south of Haniford creek, except a very small piece, and denied that there was any understanding that the Arrowsmiths were to receive forty acres of land. He claimed that he had no interest in the division of the land, but desired to sell the entire tract and did not care how it was divided. He also denied having pointed out the line where the land would be divided so as to give the Arrowsmiths a forty-acre tract.

After these preliminary negotiations were completed, a contract was entered into between the Nelsons, Arrowsmiths, and the land company, in which it was agreed that the Arrowsmiths would purchase the east sixty rods of the tract described above, together with the farming implements, tools, utensils, hay, feed, etc., for the sum of $5,250, $2,625 of which should be paid in cash and the balance secured by mortgage, due on or before three years with interest at seven per cent per annum; and that the land company would purchase the westerly sixty rods of the entire tract for $2,-750 on terms which are not material to this inquiry. Thereafter a deed was made by the Nelsons to the Arrowsmiths, describing the land as follows:

"Commencing at the S. W. corner of the S. E. ¼ of the S. E. ¼ of Sec. 27, Twp. 15, N. R. 2 W. W. M., thence running north to the N. W. corner of the S. E. ¼ of the S. E. ¼ of said section, township and range; thence west 60 rods; thence south to Haniford creek, thence along the north side of Haniford creek east to its intersection with the south boundary line of said section 27, thence east on said south boundary line of said section 27 to place of beginning, containing 40 acres more or less and being the east 60 rods of tract described in deed recorded in Book 81 of Deeds, page 257;"

The Arrowsmiths were as once put into possession of the premises which they supposed they had purchased, including the dwelling house and barn. About six weeks afterwards, the land company had the land surveyed, when it was discovered that the description, as set forth in the deed to the Arrowsmiths, contained only 31.12 acres, and that the line dividing the tract according to that deed placed the house and some of the other improvements on the land conveyed to the land company. On complaint being made by the Arrowsmiths, and after some negotiations with the land company, that company conveyed to them 3 1-3 acres of land including the house and a garden spot in connection therewith for $300. The officers of the defendant land company claimed that this was in settlement of the entire controversy, while Mrs. Arrowsmith testified that this purchase was for the purpose of securing a house to live in and that the Arrowsmiths then stated, both to the defendants Nelson and the officers of the land company, that they would insist on compensation for not having received the full forty acres as agreed upon, and that, if the mistake was not rectified, they would go into court for redress. Upon this state of the evidence, the court found that the plaintiff and her husband were induced by the defendants to enter into the contract of purchase on the representation that the tract purchased contained forty acres, and that the purchase price was fixed with reference to that amount of land. Judgment was rendered in favor of the plaintiff and against the defendants, jointly and severally, for the sum of $800, with interest from the 27th day of November, 1909, at the rate of six per cent per annum to June 1, 1912, amounting to $120, and for costs. The defendants have appealed.

The appellants first contend that the issue of fraud or misrepresentation was not sufficiently presented by the complaint. There were two causes of action pleaded, in the first of which it was alleged, in effect, that the failure of the Arrowsmiths to receive the full forty acres was due to mutual mistake as

to the quantity of land in the entire tract. In the second cause of action, it was alleged, in substance, that the portion of the land which they were to receive was represented by all of the defendants as containing forty acres, and that prior to the sale and as an inducement thereto, all of the defendants being present upon the land with the plaintiff and her husband, the defendants pointed out the dividing line and the boundaries of the tract to be acquired by the plaintiff and her husband, stating that the west boundary was at a certain gate, which gate was to the westward of the dwelling house; that it was agreed that the Arrowsmiths should receive the east forty acres, and that the West Coast Land Company would take the balance of the land; that the plaintiff and her husband accepted the deed believing that it included forty acres of land and all of the land pointed out to them by the defendants, and relied upon the representation of the defendants and took possession of the dwelling house believing that the land described in the deed contained forty acres and included the dwelling house. It is further alleged that the plaintiff and her husband did not know, prior to the survey, and that the defendants did know, or ought to have known, that the deed did not convey all of the land pointed out to the Arrowsmiths as the land they were to take by the deed, and ought to have known that the house the possession of which was given to the Arrowsmiths was not conveyed by the deed. While the conduct of the appellant was not characterized in the complaint as fraudulent, the facts pleaded were, we think, sufficient to present the issue of fraud. The cause was evidently tried in the lower court upon the theory that that issue was sufficiently presented, and we have held that in such a case the complaint will be liberally construed. *Walsh v. Meyer,* 40 Wash. 650, 82 Pac. 938; *Andrews v. King County,* 1 Wash. 46, 23 Pac. 409, 22 Am. St. 136; *Rathbone, Sard & Co. v. Frost,* 9 Wash. 162, 37 Pac. 298. While it is not alleged in positive terms that the appellants knew of the falsity of their representations, and made them with fraudulent in-

tent, it is alleged that they knew or ought to have known of their falsity. If the Nelsons and the officers of the land company made these representations as matters of fact, assuming to know, then the fact that they did not know would be no excuse and would not relieve them from liability for having so represented. *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73; *Sears v. Stinson*, 3 Wash. 615, 29 Pac. 205; *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *West v. Carter*, 54 Wash. 236, 103 Pac. 21; *Best v. Offield*, 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *Godfrey v. Olson*, 68 Wash. 59, 122 Pac. 1014.

It is also urged that, if it can be said that a cause of action for fraud was alleged in the second cause of action, it was inconsistent with the allegation of mutual mistake in the first. While this might have been sufficient ground for a motion to strike or to compel an election, no such motion was interposed. We deem the complaint sufficient to present the issue of fraud when attacked upon this ground for the first time on appeal.

It is next contended that Nelson was not a party to the mistake. We think, however, that the evidence shows more than a mere mistake. The respondent testified that Nelson was present and participated in the representations, both as to the quantity of land and as to where the west line of the respondent's land would run, and also represented that there were ten acres of land south of the creek. We cannot say that the trial court was not justified in believing this testimony, though it was contradicted by Nelson. There was evidence that he knew that there were not eighty acres in the entire tract. There was no claim that he ever advised the Arrowsmiths of this fact, though it cannot be doubted that he knew throughout the negotiations that they were expecting to receive forty acres of land and were paying his price in that belief.

Proceeding upon the theory that the evidence showed nothing more than a mutual mistake, the appellants contend

that the respondent's only remedy was to rescind the contract. What we have already said disposes of this contention. There was evidence to justify the finding that the representations complained of were actually made, and that the appellants knew or ought to have known that they were false. This brings the case within the rule sustained by the decisions last above cited. While some of these decisions are based on the ground of mutual mistake, the better ground and one found present in all of those cases, is that the party having the better means of knowledge, who assumes to know a material fact, and so represents to the other party's detriment, cannot escape liability on a plea of innocent mistake. See especially *Godfrey v. Olson* and *Best v. Offield, supra.*

It is next contended that where, as here, the land is described by metes and bounds, followed by a statement of the number of acres, "more or less," it is a sale in gross, and not by the acre, and there can be no right of action for any deficiency. Unquestionably, that is the general and controlling rule where no fraud is alleged and the only question presented is to be solved by a construction of the written instrument. *Hyde v. Phillips,* 61 Wash. 314, 112 Pac. 257. But like other general rules, it has well-recognized exceptions, as is indicated in the last case cited, where we said:

"To take the case out of the general rule there must be an express covenant or some allegation of fraud or misrepresentation. There must be artifice and deceit, or, as some courts have held, the deficiency must be so great as to warrant a court in saying that the deficiency amounts to a failure of consideration."

The rule with its exceptions has been so admirably stated by the supreme court of Kentucky, in a well-considered opinion, that we take pleasure in adopting its language.

"Sales in gross may be subdivided into various subordinate classifications: 1st, sales strictly and essentially by the tract, without reference, in the negotiation or in the consideration, to any estimated or designated quantity of acres. 2d, sales

of like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner as to show that the parties intended to risk the contingency of quantity, *whatever it might be, or how much soever it might exceed, or fall short of, that which was mentioned in the contract.* 3d, sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. 4th, sales which, though technically deemed and denominated sales in gross, are, *in fact,* sales by the acre, and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud. . . . But in sales of either of the latter kinds, an unreasonable surplus, or deficit, may entitle the injured party to equitable relief, unless he has, by his conduct, waived or forfeited his equity." *Harrison v. Talbot,* 2 Dana (Ky.) 258, 266, 267.

See, also, *O'Connell v. Duke,* 29 Tex. 299, 94 Am. Dec. 282.

The rule thus expressed is so obviously sound, just and equitable, and so conducive to that spirit of fairness which should characterize all business dealings, that we give it our unqualified approval. In the case before us, the shortage equals almost one-fourth of the tract which the grantees were led to believe they were receiving and for which they were paying. The use of the words "more or less" in the deed was never intended to cover the hazard of so great a discrepancy. Here there was evidence of actual misrepresentations by the appellants, who assumed to know, as to the amount of the land, and as to where the west line of the land to be conveyed would run. The tract was so irregular in shape that its area could not be determined by the purchaser without an actual and careful survey. The Arrowsmiths had a right to rely upon the superior means of knowledge and the assumed knowledge of the appellants. The situation is closely anal-

ogous to that found in *Best v. Offield, supra.* The appellants cannot escape responding in damages for their representations by an appeal to the general rule of conveyancing and construction that a sale in gross is presumed regardless of the acreage named in the deed where the price is not paid by the acre, and that the use of the words "more or less" evidences a hazard on either side that the acreage may not be exact. This rule is intended to assist in ascertaining intention, not to cover up a contrary intention. It can only be applied where neither assumes to know, and where there is no representation of quantity as a *fact.* Any actual representation of quantity as a fact by one who assumes to know it as a fact under circumstances which would warrant the other party in relying upon such representation must be treated by the same rules which govern representations as to any other material and inducing fact. On the conflicting evidence here, we cannot say that the court was not justified in awarding the judgment made.

The plaintiff has taken a cross-appeal, claiming that the court should have allowed larger damages. We will not consume space by reviewing the evidence as to the value of the land. The Arrowsmiths paid something over $100 an acre, on the assumption that there were forty acres of the land. The damages found by the court approximate that value an acre for the shortage. We cannot say that the award should have been larger.

The judgment is affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.