[No. 12611.   Department One.   September 13, 1915.]

HENRY H. HAVEN *et al.*, *Appellants*, v. JOSEPH R. ANDERSON *et al.*, *Respondents*.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—FRAUDULENT REP-
RESENTATIONS.   The vendees are entitled to a rescission of a contract
for the sale of land, where they purchased in reliance upon the as-
sumption, induced by the vendor's conduct, that boundary fences
were upon the true lines, which were represented to include at least
eighty acres of good upland, while a subsequent survey showed a
loss of 29 acres of good lands and a ferry landing included within
the fences, but outside of the true boundaries; and it appears that,
without the land within the enclosure, the land could not be profit-
ably platted, for which purpose it was purchased.

Appeal from a judgment of the superior court for Yakima
county, Grady, J., entered October 19, 1914, in favor of the
defendants, in an action for rescission, tried to the court.
Affirmed.

*James O. Cull* and *N. K. Buck*, for appellants.

*Joseph R. Anderson*, for respondents.

CHADWICK, J.—Prior to December, 1913, appellants were
the owners of lots 5, 6, 7 and 8, being the south half of the
north half of section 2, township 13, north, range 25, E.,
W. M.   This land lies along the Columbia river, in Grant
county.

On the 5th of January, 1914, respondents Anderson and
wife agreed to purchase the land for the sum of $8,000, less
certain taxes and a mortgage lien of $2,000 to be paid by
the purchasers and credited by the owners on the total pur-
chase price.   Respondents, in pursuance of the agreement,
paid to appellants on the same day $50.   A written contract,
together with two certified checks for $450 each, were placed
in escrow with respondent Yakima National Bank, to be de-
livered to appellants upon their compliance with certain con-

[1]Reported in 151 Pac. 489.

ditions necessary to be performed before marketable title could be given.

Respondents' object in purchasing this land seems to have been for the purpose of platting the land into ten-acre tracts, each tract to contain some good land, or in other words, enough good land to counterbalance the poor land. Respondents had been on the land only twice, both times after dark, before they moved onto it on January 17, 1914. Soon after their arrival and for the purpose of platting the same into ten-acre tracts upon accurate lines, they had the land surveyed. The survey revealed a very material discrepancy in the land enclosed by fences and the area set out in the abstract.

On February 22, 1914, respondents notified appellants that the title was not, in their estimation, a marketable one, owing to an unsatisfied judgment thereon, and assigned various other defects. Appellants thereupon satisfied the judgment referred to. Respondents still refusing to fulfill their contract, appellants brought suit to have the sale contract, deed, and the certified checks, held by respondent bank, delivered up to them. Respondents answered, asking for a rescission of the contract upon the ground of misrepresentation with reference to the location of the land, and asked for the return of the escrow papers and checks, for personal judgment for $300 general damages, and $150 as special damages, and for a dismissal of the action. Respondents then abandoned the land.

The court below held that appellants had erected the fences believing them to be on the true line, sustaining this belief by building a dwelling outside of the true boundary line—the improvements were made before they proved up on the land; that an owner and vendor is presumed to know the true boundaries of his land, and that the sale of the land by appellants, within the enclosure marked out as it was by fences, was a representation that the tract of land sold and the one enclosed were identical; that the purchaser relied

upon this representation and purchased in consequence thereof; that there was nothing to put him on inquiry, and that he had a right to rely upon the representation; that, while the representations might not be intentionally false, this is immaterial in a suit for a rescission, as the effect on the purchaser is the same.

A decree was entered rescinding the contract, and the escrow deed and checks held by respondent bank were ordered surrendered to the clerk of the court and by him to be delivered to respondents Anderson and wife. The court also allowed judgment against appellants for their costs and disbursements, and the sum of $50, paid by them at the execution of the contract, with interest at 6 per cent, and also for $13, with interest at 6 per cent on same, and appellants and respondents were directed to pay equal portions of the costs and attorneys' fees for respondent bank. From this decree, plaintiffs have appealed, claiming that the evidence submitted at the trial did not justify the decree of the court and finding of fraud or misrepresentation on the part of appellants.

There is ample testimony to sustain the finding that appellants represented that there was at least 80 acres of good upland; that the land was purchased under the assumption, induced by the conduct of appellants, that the fences were upon the true lines and the land within them was the land sold. A subsequent survey revealed a loss of about 29 acres of the good land. The tract borders on the Columbia river and a part of it is rocky and sandy bars and unfit for cultivation; that without the land within the enclosure, the land cannot be profitably platted, and that the respondents will lose a ferry landing which they considered in the trade but which will fall without the true enclosure.

We think the case falls within the rule announced in *Arrowsmith v. Nelson*, 73 Wash. 658, 132 Pac. 743, and ought to be affirmed.

Affirmed.

MORRIS, C. J., HOLCOMB, MOUNT, and ELLIS, JJ., concur.