[No. 14153. Department One. February 6, 1918.]

MATT STARWICH *et al., Respondents,* v. CHARLES V. ERNST *et al., Appellants.*[1]

PLEADING—ELECTION BETWEEN CAUSES. Under a complaint alleging two causes of action, one for breach of warranty of a deed, and the other for false representation as to the location of a building upon the lot conveyed, it is not error, after issue joined, to refuse to require an election; since but one recovery was sought for separate acts culminating in one result, notwithstanding an attempt to divide it into two causes of action.

FRAUD—MISREPRESENTATIONS—INTENT AND KNOWLEDGE. It is actionable misrepresentation to state that a building was upon a lot conveyed, although not wilfully false or made with intent to deceive, where the building extending into the street was the major part of the consideration and had to be removed, and but for the belief that it was on the lot, the purchase would not have been made.

MUNICIPAL CORPORATIONS—STREETS—ENCROACHMENT — EVIDENCE—SUFFICIENCY. Findings that a building encroached upon a street are sustained where it appears by the preponderance of the evidence that several complete surveys from monuments found on the ground so indicated.

SAME—STREETS—ENCROACHMENTS — ESTOPPEL OF CITY — FORBEARANCE. The act of a city in allowing sidewalks to be constructed in front of a building pursuant to ordinance calling for a sidewalk flush with the street line does not estop the city from afterwards asserting that the building protruded into the street; as mere forbearance does not work an estoppel.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—RECORDS. The discovery of a public record material to a defense or cause of action is not within the rule of newly discovered evidence which warrants the granting of a new trial.

HIGHWAYS—WIDTH—PREEXISTING STREET. Laying out a county road sixty feet wide, along the center of a platted street eighty feet wide in public use as such at the time, does not affect the width of the existing way.

Appeal from a judgment of the superior court for King county, Ralston, J., entered November 10, 1916,

[1]Reported in 170 Pac. 584.

upon findings in favor of the plaintiffs, in an action for damages, tried to the court.   Affirmed.

*Spence & Denham,* for appellants.

*Vanderveer & Cummings,* for respondents.

FULLERTON, J.—The appellants, in the year 1907, conveyed by warranty deed to the respondents a lot in the city of Seattle upon which was a two-story brick building.  In the year 1915, the city ordered the street on which the lot fronted to be improved by the laying of cement walks.  It was then claimed by the city that the building extended into the street over the lot line two and nine-tenths feet at one corner and two and three-tenths feet at the other.  The city gave notice to the respondents to remove the building from the street, which they did by cutting off the building to a line coinciding with the lot line and installing a new front. The respondents thereupon brought the present action against the appellants to recover in damages for the enforced alteration of the building.  On a trial to the court, they recovered judgment in the sum of $740.95. This appeal is prosecuted from the judgment so recovered.

While the respondents sought but one recovery, namely, the cost of the alteration of the building and its lessened value by reason of the shortening, they divided their complaint into two causes of action.   In the one, they alleged a breach of the warranty contained in the deed, and in the other, they alleged that the appellants had falsely represented that the building was wholly upon the lot conveyed.  An answer was filed to the complaint putting in issue its traversable allegations, but no objection was taken to its form or substance either by motion or by demurrer.

When the case was called for trial after issue joined, the appellants moved that the respondents elect upon

which of the causes of action stated in the complaint they would rely for a recovery. The motion was denied by the trial court, and its action in so doing constitutes the first error assigned for reversal. But we think the action of the court without error. There was but one cause of action stated in the complaint, notwithstanding the pleader attempted to divide it into two. The ultimate object and purpose of the action was to recover for a loss which the respondents had unwittingly suffered and for which they claimed the appellants were primarily liable. That this liability arose through independent and separate acts of the appellants did not necessarily make each act a separate cause of action. In other words, separate and distinct acts, culminating in one result and giving rise to but one liability, do not require statement in separate counts or make the doctrine of election applicable. All can be united in one complaint as one cause of action. Proofs may be admitted upon all of them, and a recovery may be had if any one or more are found to be proven. Any other rule would amount to a denial of justice. It would be to compel a plaintiff to elect between different grounds of liability and, at his peril, pursue that one to the exclusion of the others. Such is not the rule in this jurisdiction, as we have several times announced. *Hutchinson v. Mt. Vernon Water & Power Co.*, 49 Wash. 469, 95 Pac. 1023; *Bernot v. Morrison*, 81 Wash. 538, 143 Pac. 104, Ann. Cas. 1916D 290; *O'Donnell v. McCool*, 89 Wash. 537, 154 Pac. 1090. It may be that, had the appellant moved timely against the complaint, the trial court, in the interest of good pleading, would have required the respondents to state the grounds of their complaint as one cause of action, but it was not error, after issue joined on the complaint as framed, to refuse to compel them to elect upon which of the parts of the complaint they would rely for a recovery.

On the merits, the first contention of the appellants is that the evidence did not justify the finding of the court to the effect that the appellants, in the negotiations leading up to the deed, made false representation as to the location of the building. The affirmative evidence upon this question, it must be admitted, is somewhat meager. It was shown, that the principals to the contract never in fact met prior to the consummation of the sale; that the bargain was made between the respondents and the agent of the appellants; that, when the subject of the purchase was broached, the respondents inquired of the agent as to the nature of the improvements upon the property and were told that there was a two-story brick building upon it, and that they afterwards went with the agent to inspect the property, when the lots and the building were pointed out to them. There was no direct statement that the building was wholly within the lot lines, nor was the fact apparent to an ordinary observer, and possibly could not have been discovered without a survey of the boundaries of the street. But it was shown that the building was one of the moving considerations which led up to the purchase of the property and gave rise to the major part of the purchase price paid therefor. It could not be used elsewhere than upon the lot conveyed without demolishment and reconstruction, and manifestly the purchasers were led to believe that the building was wholly upon the lots; in fact, it is stipulated as part of the evidence in the case that they would not have purchased the property had they known otherwise. It seems to us that there was here a representation that the building was upon the lot. True, there was no showing that the representation was wilfully false or made with intent to deceive, but it is not the rule in this jurisdiction that, in the sale of real property, the representations must be wilfully false or be made with in-

tent to deceive in order to give rise to a liability. The prevailing rule is stated and the authorities collected by Judge Ellis in the case of *Grant v. Huschke,* 74 Wash. 257, 133 Pac. 447, where the following language is used:

"The appellant contends that there was no evidence that he knew that his representations were false, that such knowledge is an essential element in the establishment of actionable fraud, and that, in the absence of proof of such knowledge, the admission of evidence as to his representations was error. It is usually held that representations to be actionable must be made *scienter,* but it does not follow that actual knowledge of the true facts or of the falsity of the representations must be shown. Representations, as of his own knowledge, of material and inducing facts susceptible of knowledge, made by a vendor in ignorance of the facts, but with the knowledge that the vendee is relying upon the representations as true and under circumstances reasonably excusing the vendee from investigating for himself, are actionable on the part of a vendee so relying to his injury. In such a case, the fraud of the vendor consists in representing as true, with knowledge that it is being relied upon as true, that which he did not know to be true. This rule is supported by the trend of modern authority and has been consistently adhered to by this court. *Hanson v. Tompkins,* 2 Wash. 508, 27 Pac. 73; *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205; *O'Connor v. Lighthizer,* 34 Wash. 152, 75 Pac. 643; *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Best v. Offield,* 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *Godfrey v. Olson,* 68 Wash. 59, 122 Pac. 1014; *Arrowsmith v. Nelson,* 73 Wash. 658, 132 Pac. 743; Sutherland, Damages (3d ed.), § 1169. The evidence was competent and sufficient to take the case to the jury under this rule. Obviously, the rule is the same whether the action be in equity for a rescission or at law for damages."

The appellants' counsel, in their very able brief, make an engaging argument in which they seek to show

that the rule thus announced is inapplicable to the facts
shown in the case at bar. But without pursuing the
inquiry further, we think that, while the facts of the
cases differ, the governing principle is the same, and
that the trial court did not err in its holding that there
were actionable misrepresentations.

Since we have concluded that the respondents may
recover on the ground of misrepresentation if the build-
ing in fact extended into the street, it is unnecessary to
discuss the question whether a recovery will lie for a
breach of the covenant of warranty. An examination
will show that the authorities are not uniform on the
question, and we-prefer to pass it until the necessity
for a decision may arise.

The next question is whether the evidence justifies
the finding that the building projected into the street.
The lot conveyed was originally a part of a tract of
land platted as an addition to the city of Seattle under
the name of "J. J. Moss' Plan of South Seattle." The
plat was executed and filed for record in 1869. It was
not then incorporated as a city or town, but was later
incorporated with additional territory under the name
of South Seattle. This incorporation was annexed to
the city of Seattle in 1905. The street fronting the lot
in question was known on Moss' plat as Colfax street.
When a street of the city of Seattle known as Eighth
avenue south was extended it was found to coincide
with Colfax street, and from thence on Colfax street
was known by the name of the Seattle street, although
there is no direct evidence that its name was officially
changed. In determining whether the building was ac-
tually in the street, the city's engineers used the line of
the extension of Eighth avenue south as the true line,
making their measurements from the extension of that
line.

It is the appellants' claim that the evidence not only fails to show that the original Colfax street corresponded in exactness with that line, but, on the contrary, shows that it did not so correspond. In support of this they offered evidence tending to show that Moss' plat was in no manner connected with the city of Seattle as it was originally platted and laid out on the ground; that the brick building in question was the third building erected upon the lot; that it had been preceded by two wooden buildings, each of which had been destroyed by fire; that, when the first of these buildings was erected, stakes were in existence, apparently marking the corners of the lot, which were driven into the ground and the building erected with reference thereto; that these stakes were visible after the second fire, and that the brick building was erected in accordance therewith. As we read the record, however, the witnesses do not pretend to say that these were the stakes set by the surveyor who laid out upon the ground the plat of Moss' addition. And since the front line of the building makes an angle with a line drawn from other monuments set by the surveyor to mark the plat on the ground, and makes an angle with the line of other buildings erected in this and other blocks of the addition on the same side of the street, buildings erected prior to the extension of Eighth avenue south, it would hardly seem that they were monuments placed by the surveyor. It would, indeed, be a somewhat remarkable coincidence had it been found that some or any of the streets on Moss' plat coincided with an existing street in the city of Seattle, had the plat been marked on the ground independently of, or without reference to, such streets. But it was laid out as an addition to the then existing city of Seattle, and it is not strange if the donor of the plat or the surveyor who marked the plat on the ground foresaw that the addi-

tion might some day become incorporated in and made a part of the city to which it was an addition, and so foreseeing, made its principal street correspond with an existing street of that city.

On the other side, the city surveyor of the city of Seattle testified that Moss' plan of South Seattle had been surveyed twice by his office pursuant to ordinances of the city of Seattle, the first time in 1906, shortly after it had been annexed to the city, and the second time in 1914, the field notes of such surveys being filed as city records. Continuing he said (we quote from the abstract):

"Both of these surveys showed the building on lot 6 to be in the street a distance of 2.7 feet at its southwest corner and 2.3 feet at its northwest corner. He also had with him in court field notes of an official city survey of a part of Moss' Addition, city records, made in 1891 by the city of Seattle. The surveys of 1906 and 1915 were based upon and extensions of this survey of 1891, and the monuments found when that survey was made. There was found no way of positively identifying the monuments found in 1891 as original monuments placed there by the surveyors of the addition in 1869. But one monument was a stone monument at the intersection of 9th avenue south and Dakota street, one block east of the property in question, and the block corners were found at the northwest corner of block 28, and at the northwest corner of block 27. This last is one block north of the property in question and on the same side of 8th avenue south. Using these monuments he had made surveys of almost the entire addition, stakes, fences and everything, and the surveys averaged the addition very well, varying in some places 3 or 4 inches. They were, however, all minor discrepancies, and 8th avenue south did not elsewhere show any such material discrepancies as shown on lot 6. The building on the northwest corner of 8th avenue and Dakota street and the building one block north on the same side of Dakota street as the one in question, were exactly on the true line. The building immedi-

ately south of the one in question was, however, two feet out at the northwest corner, but only 1.1 feet at the southwest corner. These two buildings, accordingly, jutted into the street at different angles to the true line, and consequently could not have been built upon the same line.''

We think it unnecessary to pursue the argument further. As we view the record, the evidence clearly preponderates with the conclusion of the trial court to the effect that the building protruded into the street as the same was laid out on the original plat.

The next contention is that the city of Seattle was not in a position to compel the alteration of the building, and, in consequence, any alteration made thereon by the respondents was voluntary and the expense thereof not collectible from the appellants. It was shown that, in 1906, the city of Seattle created a local improvement district of which this part of the street formed a part, in which it provided for a board walk to be laid flush with the street line, and that such a walk was constructed in front of this building pursuant to the ordinance creating the improvement district, without complaint as to the location of the building, although the city then knew that, in accordance with these surveys, the buildings protruded into the street. It is said that, by this act, the city lulled all who dealt with the property into a sense of security that the line fixed by it and designated under its plans and specifications as the true line was, in fact, the true line, and that the city is now estopped from asserting to the contrary.

There are cases which maintain the doctrine that a city may be estopped by its acts from asserting that a given line is the true line of a street, when it may not be so estopped by adverse possession or the running of the statute of limitations. But none that are cited to us, and none that we have found, hold that the act

cited here constitutes an estoppel. The cases need not be cited or reviewed, but it will be found that each of them contains some element of injury to the person claiming the estoppel, such, for example, as where the city adopts a line as the line of a street which afterwards proves not to be the true line, and the property owner makes improvements with reference to the adopted line. But none maintain the rule that mere forbearance to enforce the removal of a structure from a street when discovered works an estoppel to subsequently enforce its removal. This was all the city did in the particular instance, and we cannot conclude that its acts worked an estoppel.

The appellants moved for a new trial on the ground of newly discovered evidence. It was shown by affidavits that, subsequent to the official platting of the street, which was eighty feet wide, and before its incorporation into a municipality, the county commissioners laid out a county road sixty feet wide which extended along the street thirty feet on each side of the center thereof. The trial court denied the motion on two grounds: first, that the fact shown was a matter of record and that the failure to discover it before the trial was not the exercise of due diligence; and second, that it was immaterial in any event. We think the ruling correct on each of the grounds stated. It is generally held that the discovery of a public record material to the prosecution or defense of a cause is not within the rule of newly discovered evidence which warrants the granting of a new trial. Such matters are at all times within the reach of the complaining party, and it is because of a lack of diligence if he fails to discover them. But waiving this, we cannot conclude that the matter shown if in the record could in any manner affect the result. Nothing more is shown than that the county, in the exercise of one of its powers, pro-

ceeded to lay out a public highway a part of which extended along this existing street. But the street was at the time a public highway in use as such. The laying or purported laying over it of another highway neither added to nor detracted from the existing way. It remained a public highway as well after as it did before this act of the county, and was neither widened nor narrowed thereby. The statute at that time, it is true, provided a method by which a street or certain portions of a street could be vacated by county commissioners under designated circumstances, but the establishment of a new highway over a street was not the prescribed method.

It is our conclusion that the judgment must be affirmed, and it is so ordered.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.