[No. 32735. Department One. June 25, 1954.]

EARL LOEHR et al., *Appellants*, v. VILAS MANNING et al., *Respondents*.[1]

· · [1]Reported in 272 P. (2d) 133.

*Cameron Sherwood* and *Robert A. Comfort,* for appellants.

*Geo. W. Thompson* and *Wm. Keylor Smith,* for respondents.

HAMLEY, J.—The vendees under a contract to purchase a farm brought this action to recover damages for misrepresentations in negotiating the sale. The vendors and a real-estate agent, together with the latter's wife, were named defendants.

Plaintiffs alleged that defendants made the following misrepresentations, each of which had been relied upon by plaintiffs: (1) That the farm comprised forty-five acres of land, whereas it actually contained 37.76 acres; (2) that the farm had pastured fifty head of cattle and would probably support more than fifty head, whereas it would not support that many head of cattle; and (3) that the farm had a water right for forty-five acres, when in truth it had a water right for only fifteen acres.

The case was tried to the court without a jury. At the close of plaintiff's case, an order was entered dismissing the real-estate agent and his wife. No appeal has been taken from that order. After a full trial, judgment was entered for defendant vendors. Plaintiffs appeal.

The trial court found the facts to be as follows: In January, 1951, respondents, Vilas Manning and Jessie Manning, his wife, decided to sell their dairy farm. The reasonable value of the farm at that time was $31,000, including buildings and improvements having a reasonable value of $18,500. They listed the property for sale with Grant L. Bullock, a real-estate agent. In doing so, Vilas Manning stated to Bullock's employee, Ray Tomlinson. that the man from whom Manning had purchased the property had advised Manning that the farm comprised forty-five acres.

Pursuant to this listing, Bullock caused the following advertisement to be published in the January 7, 1951, issue of the Walla Walla Union-Bulletin, a daily newspaper:

"MODERN GRADE A DAIRY FARM—45 level acres, deep soil. Good buildings, 3 B.R. home with basement, fireplace; Plenty water, excellent location. $31,000"

Appellants Earl and Cecil N. Loehr were experienced cattlemen. They were desirous of purchasing real property which would pasture their forty-eight head of cattle. On February 22, 1951, without having seen the advertisement quoted above, they contacted Bullock. He first showed them other property, and then told them that he would take them to see a "forty-five acre place."

Appellants then went to the Manning farm, and were offered ample opportunity to inspect it. They spent approximately one hour on the farm, and viewed it from a place in approximately the center of the property. The acreage was not a matter of importance to appellants in making the purchase, and they made no inquiries on the subject. The farm was not irregularly shaped, and its boundaries were open and apparent. Nevertheless, without a survey, appellants could not have ascertained the true acreage.

Later in the day on February 22, 1951, appellants executed an earnest-money agreement to purchase the farm. A few days later, Earl and Cecil Loehr again inspected the property and its boundaries, in company with Vilas Manning. The contract of sale and the deed were executed and delivered on February 28, 1951.

During the entire negotiations, the only representation which was made to appellants by respondents or their agents concerning the acreage was Bullock's statement quoted above. There were no misrepresentations as to pasturage or water rights, and the farm fully served the purpose for which appellants had purchased it.

Both the earnest-money agreement and the contract specified a lump sum purchase price of $31,000. The deed recited a consideration of ten dollars. In all three instruments, the property is described with reference to certain lots located in a designated quarter of a particular section. Neither in the property description, statement of purchase price or consideration, nor elsewhere in these instruments is there any reference to the quantity of land sold or conveyed. The property was purchased in gross as a parcel, rather than by the acre. The property described in these instruments actually comprises 39.76 acres.

While the findings of the trial court do not cover the matter, the manner in which appellants discovered the actual acreage is worth noting. In the fall of 1951, appellants desired to sell the farm, and listed it with a real-estate agent as containing forty-five acres. The agent interested an adjoining property owner, Clarence E. Shaw, but the latter apparently doubted that there were forty-five acres. The contract of sale to Shaw, executed on November 30, 1951, therefore specified a purchase price of $722.25 an acre. Had there been forty-five acres, this would have aggregated $32,501.25, or slightly in excess of the purchase price appellants had paid.

Surveys later made by Shaw and appellants revealed that there were 37.76 acres, exclusive of two acres in county road lying within the boundaries of the described property. The result was that appellants realized only $27,272.16 by selling the farm by the acre rather than in gross.

The first four assignments of error bring into question several of the findings of fact summarized above. Our review of the record leads to the conclusion that the evidence does not clearly preponderate against these findings.

The remaining assignments of error present the question of whether the findings support the judgment of dismissal.

██ This being an action in fraud, the findings must be deemed to support the judgment of dismissal if they negative any of the essential elements of actionable fraud.

These essential elements have several times been enumerated by this court, and need not be repeated here. See *Dixon v. MacGillivray,* 29 Wn. (2d) 30, 185 P. (2d) 109; *Marion v. Grand Coulee Dam Hotel,* 35 Wn. (2d) 589, 214 P. (2d) 204; *Salter v. Heiser,* 36 Wn. (2d) 536, 219 P. (2d) 574.

██ With regard to alleged misrepresentations as to pasturage and water rights, the findings negative the essential element of falsity. With regard to the established misrepresentation as to acreage, as published in the newspaper advertisement, the findings negative the essential element of reliance thereon by appellants. With regard to alleged misrepresentations as to acreage, made during the inspection of

the premises, the findings establish that no such representations were made.

■ With regard to Bullock's alleged misrepresentation as to acreage, before showing appellants the tract, the findings recite:

"Plaintiffs contacted defendant, Grant L. Bullock, and after being shown other property, were taken to the property of defendants Manning, defendant Bullock having advised plaintiffs that he would show them a 'forty-five acre place.' "

Assuming that this statement by Bullock constitutes a false representation as to acreage, it seems to us that other findings negative the essential element of reliance thereon by appellants. It is recited in the findings that the acreage contained in the property was not a matter of importance to appellants in making the purchase; that they did not inquire of respondents regarding the acreage; and that the farm fully served the purpose for which appellants purchased it.

■ The instruments referred to in the findings indicate that appellants did not require that the property description include a reference to acreage. Nor did appellants, as did Shaw, require that the purchase price be related to acreage. It was a sale in gross and not by the acre. 1 A. L. R. (2d) 9, 37, annotation by C. T. Dreschler. This circumstance does not preclude recovery where all the essential elements of fraud are clearly established. It does, however, tend to negative the element of reliance.

The rule to be applied in actions based upon fraudulent representations as to acreage was stated as follows in *Rackham v. Koch,* 125 Wash. 451, 459, 216 Pac. 835, cited by appellants:

"Where the owner has shown his land to a prospective purchaser and has pointed out the boundaries of it, and has represented that there is a definite number of acres within those boundaries, and the acreage could be determined only by a survey, and the purchaser relies upon such representations, he is entitled to recover damages on account of any material shortage which may exist, notwithstanding he has made a detailed examination, providing the shortage is not

so glaring and palpable as to warn even the inexperienced purchaser."

In the *Rackham* case, the vendee prevailed because he was able to prove, among other things, that he had relied upon the representation as to acreage. In the instant case, reliance is negatived by the findings of fact.

Appellants cite several other decisions of this court in which relief was granted because of fraud or mutual mistake with respect to the quantity of land conveyed. See *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73; *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054; *Arrowsmith v. Nelson*, 73 Wash. 658, 132 Pac. 743; *Austin v. Dunn*, 176 Wash. 453, 29 P. (2d) 740; and *Dixon v. MacGillivray*, 29 Wn. (2d) 30, 185 P. (2d) 109. In each of these cases, however, it was established that the representation was a moving factor inducing the purchaser to enter the transaction. As before indicated, that fact was not established in the case before us.

The judgment is affirmed.

GRADY, C. J., MALLERY, FINLEY, and OLSON, JJ., concur.