[No. 12665. Department Two. January 6, 1916.]

HARRIET MUMFORD, *Appellant*, v. CARMICHAEL J. SMITH
*et al.*, *Respondents*.[1]

EXCHANGE OF PROPERTY—RESCISSION—FRAUD — EVIDENCE — SUFFI-
CIENCY. The owner of farm lands exchanged for an apartment house
in reliance upon false representations, was defrauded and is entitled
to a rescission, where it appears that she gave property of the value
of $4,000 to $5,000 in return for an equity in the apartment house
not exceeding in value $500, and her vendee falsely represented the
income from rentals, the desirability of the location, and that a
railroad company was about to build a depot in the vicinity, and
that he had customers for the apartment house to whom he could
sell it in a few months at a price which would net the values of the
property given in exchange; the gross inadequacy of price being a
badge of fraud, and some of the representations relating to matters
the truth of which was not readily ascertainable, and not merely
"seller's praise" or matters of opinion.

SAME—FRAUD—RESCISSION—DECREE—RELIEF — MONEY JUDGMENT.
Where, in a rescission of an exchange of real property for fraud,
a recovery in specie is precluded by the defendant's sale and mort-
gage of parts of the property to *bona fide* purchasers, the plaintiff
is entitled to a recovery in specie of the mortgaged and unsold prop-
erty, with recovery over against the defendant personally for the
amount of the loss, measured by the mortgage and the value of the
property sold, upon reconveying the defendant's property.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered December 24, 1914, in
favor of the defendants, in an action for rescission, tried to
the court. Reversed.

*Aust & Terhune* and *J. Y. Kennedy*, for appellant.
*E. C. Dailey*, for respondents.

FULLERTON, J.—In the early part of the year 1913, the
respondent Carmichael J. Smith, a real estate broker doing
business in the city of Everett, inserted an advertisement in
a local paper offering to exchange a hotel in that city for

[1]Reported in 154 Pac. 153.

farm lands. The appellant, Mumford, noticing the adver-
tisement, called upon Smith with a view of making such an
exchange. Mrs. Mumford at that time owned a forty-acre
tract of land situated near Marysville, in Snohomish county,
and some one hundred lots in an addition to the town of Des
Moines, in King county. Together they visited the hotel
mentioned in the advertisement, and the appellant expressed
her satisfaction therewith, but no serious, if any, negotiations
were had with the owner looking to an exchange of property.
Smith had, in the meantime, acquired the legal title to an
apartment house and the lots on which the same was situate,
in the city of Everett, and he immediately directed the ap-
pellant's attention to this property, offering it in exchange
for her property. After some negotiation, an exchange was
effected, the appellant taking the apartment property, and
the respondent taking the forty-acre tract and some seventy-
one of the lots in the Des Moines addition. The deeds were
exchanged on June 13, 1913. Later on, the appellant con-
ceived that she had been overreached in the transaction, and
brought the present action to rescind the contract. In her
complaint she set forth at length the negotiations between
herself and the respondent Smith leading up to the exchange,
and charged him with falsely misrepresenting the income
derived from the property, and with making false repre-
sentations concerning its condition, its desirability as an
apartment house, and its proximity to certain improvements
about to be instituted by a public corporation which would
greatly enhance its value. Issue was taken on the complaint,
and a trial had which resulted in a judgment for the respond-
ent.

The trial judge made no findings of fact, nor does the
record otherwise disclose the grounds upon which he rested
his decision. The evidence makes it clear, however, that he
could not have found that the appellant was not defrauded.
On this question, there is no room for even a reasonable
doubt. She gave up property in the exchange which the re-

spondent admits had a substantial value, and which conservative witnesses estimated to be worth from $4,000 to $5,000 over and above its incumbrances. She received nothing in the exchange other than the apartment house property and certain furniture contained therein. No disinterested witness valued the apartment property in excess of $3,500, or the furniture in excess of $300, and some of them placed the values at even a less sum. The apartment property was taken subject to two mortgages, the one for $1,300, on which the interest was in arrears for more than a year, and the other for $1,500, on which the interest was in arrears for more than a year and a half; in fact, on the latter mortgage no interest had been paid since its execution. Giving the property its highest valuation, she did not receive, for the very considerable property she deeded to the respondent, values in excess of four or five hundred dollars.

There is but little question, also, that she was actually deceived and overreached by the respondent. While many of the representations she charges him with are denied by him, the record leaves but little doubt in our minds as to where the truth lies. He represented that the property would produce in rentals $24 per week, whereas it could not subsequently be made to bring as much as half of that sum, and this under the management of the respondent himself; he represented to her that the property was in a desirable locality for an apartment house, whereas it was shown that it is situated in what was formerly a restricted district, and because of its locality was not sought by a desirable class of tenants; he represented that a railway company had recently purchased lands in the vicinity for a right of way and would shortly erect a depot near the property, whereas no such right of way had been purchased nor was the building of a depot, so far as shown, even contemplated by a railway company; he represented that the property could be turned into cash within a short period at a price which would net the appellant the values she placed upon the property she was

given in exchange, and that he had a customer ready to take it at such a price, or to use her language: "He said he wanted three months time within which to sell the property, because he had a purchaser from Seattle waiting for their money to be handed over to them when the court decided, to buy the Knapp place. He said they had been up several times and were perfectly satisfied with the place and just asked for time until their money could be got from the east; they seemed to be heirs, as I understood it, and their case was in court and was to be decided in a short time, and by the time the case would be decided, the depot would be started and he would get $12,000 for that place; that was the way the deal was planned. He was to sell the Knapp property to those people and give me, less the commission, $12,000; the mortgage to. be deducted;" whereas he knew that the property could not be so sold for the price stated, that he had not shown it to any Seattle parties and in fact had no customer. As we say, there can be no other conclusion drawn from the evidence than that the appellant believed these representations and was induced to make the exchange she did make because of them.

The further question is, do these representations justify a rescission of the contract. It is our opinion that they do. In the first place, the difference between the values of the properties exchanged was so gross as to challenge the good faith of the transaction. In so far as the appellant is concerned, there was a gross inadequacy of consideration—for the thousands that she gave up she received only hundreds in return—and gross inadequacy of consideration has always been regarded as a badge of fraud. In the second place, all of the representations made by the respondent were not mere "seller's praise" or mere matters of opinion. Some of them, at least, related to matters of fact, the truth or falsity of which could not readily be ascertained by the appellant. She could not readily ascertain, for example, whether a right of way had been purchased by a railroad company for a line of

railway which would run near the property and that a depot building was to be constructed near the property, nor could she readily ascertain whether the appellant had under way a sale of the property which was being delayed merely because of certain necessary formalities in court procedure; and these we think were representations with reference to material matters, purposely used with the intent to deceive and defraud.

We said in *Best v. Offield*, 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55, that all the cases agree that the purchaser may rely upon representations of the vendor where for any reason the falsity of the representations are not readily ascertainable, and, clearly, the principle is applicable to certain of the representations made here. Some of the representations claimed to have been false and fraudulent may fall under the denomination matter of opinion; but the result of the whole was that the appellant was overreached and the respondent, because thereof, obtained an unjust and unconscionable advantage. The observation of Judge Root in *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799, therefore seems pertinent, namely:

"Where it is to the court perfectly plain that one party has overreached the other, and has gained an unjust and undeserved advantage which it would be inequitable and unrighteous to permit him to enforce, we do not believe that a court of equity should hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness. It is well known that many good people, and people of average or greater intelligence, are sometimes duped and misled by the skill, cleverness, and artifices of those who are adepts in the matter of deceiving their fellow men; and courts should not throw about schemers of this kind a protection that will tend to encourage the practice of their arts. Such people should not find encouragement in the thought that, by keeping their machinations within the letter of the law, they may find sanction for their practices and reap the reward of their craftiness. To the victim it is of little import whether his property is taken from him by

a bold and forcible robbery, or by an ingenious and unsus-pected deception. The injury to him is the same; and the evil effect of court decisions which permit the wrongdoer to enjoy the fruits of his chicanery is of no small import when viewed from the standpoint of public policy. It is not the function of courts to make contracts for parties, or to relieve them from the effects of bad bargains. But where the simplicity and credulity of people are taken advantage of by the shrewdness, overreaching and misrepresentation of those with whom they are dealing, and they are thereby induced to do unwittingly something the effect of which they do not intend, foresee, or comprehend, and which, if permitted to culminate, would be shocking to equity and good conscience, we think a court of equity may with propriety interpose."

It remains to inquire what form of decree should be directed. After receiving possession of the deeds, the respondent immediately sold the lots at the town of Des Moines, and increased the mortgage on the 40-acre tract from $1,000 to $1,200, retaining, however, the legal title to the latter property. It is not questioned that the purchasers of the lots situated at Des Moines, and the mortgagee of the forty-acre tract acted in the utmost good faith and, under well-known principles, the interest acquired by them cannot be questioned by the appellant. This precludes a recovery in specie of the lots, or any modification of the mortgage, but (the defendant being insolvent) it does not prohibit a recovery in specie in so far as recovery affects only the immediate parties to the contract, with a judgment over against the party perpetrating the wrong for the value of the property he has placed beyond the reach of the process of the court. This principle would entitle the appellant to a recovery of the forty-acre tract in specie, and to a judgment against the defendant Carmichael J. Smith for the value of the Des Moines lots, plus the difference in the amount of the mortgage on the forty-acre tract at the time of the exchange and the amount to which it was subsequently increased. There is some contrariety of opinion in the evidence as to the value of the Des Moines lots, but conservative witnesses valued them

at from $1,000 to $1,500. The appellant received certain small sums in rents from the apartment house with which the respondent must be credited. Striking a balance, we find that the money judgment to which the appellant is entitled is $1,250. The appellant must also reconvey to the respondent the apartment property.

The decree of the lower court is therefore reversed, and the cause remanded with instructions to enter a decree in accordance with this opinion.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.